**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 10, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ELIZABETH ANN BERTSCH,

      Plaintiff - Appellant,

v.

OVERSTOCK.COM,

      Defendant - Appellee.

--------------------

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

      Amicus Curiae.

No. 11-4128

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:10-CV-00037-DAK)**

---

April Hollingsworth of Hollingsworth Law Office, L.L.C., Salt Lake City, Utah, for Plaintiff - Appellant.

Rick Sutherland of Jones, Waldo, Holbrook & McDonough, P.C., Salt Lake City, Utah, for Defendant - Appellee.

Christine Back, (P. David Lopez, General Counsel and Carolyn L. Wheeler, Acting Associate General Counsel of U.S. Equal Employment Opportunity Commission, Office of General Counsel, on the brief), Washington, D.C., for Amicus Curiae.

Before **KELLY**, **MURPHY**, and **HARTZ**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Plaintiff-Appellant Elizabeth A. Bertsch appeals from the grant of summary judgment in favor of her former employer, Defendant-Appellee Overstock.com, on her hostile work environment and retaliation claims, and appeals the denial of leave to amend to add a disparate-treatment claim, all under Title VII of the Civil Rights Act, 42 U.S.C. §2000e-e17. We have jurisdiction under 28 U.S.C. § 1291 and affirm in part, reverse in part, and remand.

Background

In November 2002, Ms. Bertsch began work next to Dustin Latimer, a co-worker supposedly "notorious" for viewing sexually explicit videos at work, putting up a poster of a "scantily clad" woman in his cubicle, and saying things like "this department would run better if the males were doing the job." Aplt. Br. 9. She alleges that his misogynistic comments were "constant," i.e., at least weekly. Aplt. App. 442. Another female employee testified that the remarks were "daily, and sometimes hourly." Id. at 838. Ms. Bertsch also asserted that Mr. Latimer engaged in demeaning conduct such as ridiculing her in meetings, treating her like a "servant," and refusing to look at her while they talked. Id. at 638, 361, 591.

She, by contrast, claims to have had a record of promotions, positive evaluations, and no discipline—until February 18, 2004, when a flap with Mr. Latimer took place. Aplt Br. at 8, 10. Mr. Latimer, apparently piqued by Ms. Bertsch's failure to issue a "purchase order" promptly enough, sent an email, copying their supervisors and an outside vendor, which said: "Hmm. No response. I guess we will just have to wait until Beth sees fit to send it." Aplt. App. 587. The next morning Ms. Bertsch replied to Mr. Latimer and the supervisors: "[C]an we try to be a bit more professional about telling a vendor why a PO number has not been given yet. I found the previous response offensive." Id. at 586. Overstock says this embarrassing exchange, on top of existing frictions between the two—it seems they would go days without speaking, though members of a small team of about six—prompted it to investigate. A supervisor named Stormy Simon was also concerned because she had personally brought the vendor to the company; because Ms. Bertsch had not issued the purchase order in a timely way; and because Ms. Bertsch's tensions with other employees had in her view been a concern for some time. Id. 820-24.

A few days later both Mr. Latimer and Ms. Bertsch received a written disciplinary notice stating that they had been subject to complaints of "contribut[ing] to a hostile work environment." They were instructed to work more cooperatively. The notices differed in that Ms. Bertsch was told to "treat all co-workers fairly," id. at 585, while Mr. Latimer was told to "[a]bstain from

making derogatory remarks about sex or gender," id. at 603.  Overstock claims that Ms. Bertsch's co-workers did not substantiate her allegations against Mr. Latimer but did report that *she* had contributed to a hostile work environment.  Id. at 633-34.  Ms. Bertsch claims she "got along well" with everyone and that "there is no documentation of any problems between her and any other coworkers."  Aplt. Br. 13-14.

Before this incident Ms. Bertsch was never subject to discipline, but a supervisor did write in her 2003 annual review that she "needs to work on getting along with her fellow employees," Aplt. App. 584, and, in her 2004 review, that she "needs to work on the team dynamic," id. at 582.  Mr. Latimer, for his part, had apparently been warned in 2003 for "[f]ailure to work cooperatively with others" and chewing tobacco, id. at 602, 604, and would be warned in 2005 for profanity, id. at 605.  Overstock says it considered the email kerfuffle a he-said-she-said affair between difficult employees.  Id. at 633-34.  Ms. Bertsch made no complaints about Mr. Latimer after their February discipline.

The next day, on February 26, 2004, Ms. Bertsch emailed a series of apologies to co-workers (including Mr. Latimer), which said things like, "Because of a deeply humbling experience, I have learned that I am the problem."  Id. at 336.  She claims these emails were a last-ditch effort to save an imperiled job she needed to support her child.  Id. at  484.  Her notice also contained a "corrective action plan," which stated that "Beth contributes to a hostile work environment"

- 4 -

and has "shown a pattern of not supporting co-worker business needs and she needs to prioritize her tasks more effectively." Id. at 585. She was allowed to contest the discipline but instead wrote on the form: "I realize I have been contributing to some departmental contention. I would like the opportunity to personally apologize to those I have offended to help make amends." Id. at 585.

Subsequent events are controverted. Ms. Bertsch says that on the day before she received her written notice, she was called in by a supervisor (she can't remember who) and told that "I was the problem and that I could either quit or be sent to the warehouse." Id. at 480. (The warehouse is an Overstock facility some five miles away; it is not a proper office like "corporate," where she spent most of her time, but it does seem to have had desks and phones.) Supervisor Brian Popelka denies this. Id. at 713-14. He says that transfer was merely a solution proposed in order to separate colleagues facing a "breakdown of their relationship"; he recalled that Ms. Bertsch already spent time at the warehouse, since she, unlike Mr. Latimer, reviewed inventory. Id. at 708-09. Stormy Simon, her other supervisor, recalls Ms. Bertsch working there "at least a day a week" but also that reassignment was not "an option," presented for Ms. Bertsch's consideration, but a "manager's decision." Id. at 826. Another controverted fact: Ms. Bertsch says she was never actually sent, id. at 511; Overstock supervisors recall that she *was,* id. at 710.

In May 2004, Overstock received new complaints about Ms. Bertsch, this

time from warehouse personnel, over a "bottleneck" she created and what a supervisor called a needlessly "dramatic" email concerning mishandled book inventory ("Oh my God," she wrote, "is this the stuff from Random House that was supposed to have been sent back *ages* ago??). Id. at 600-01; 716-18; 830. Mr. Popelka recalled: "at corporate she had operational performance and bad behavior, and when she got to the warehouse, she had bad behavior and now the performance wasn't there either. And Stormy and I felt this was not ever going to resolve itself. You know, we just chose termination." Id. at 718. Overstock fired her on May 17, 2004. The termination form used language like "[r]esistant," "difficult," "attitude has isolated her," "productivity suffers," "sarcastic," "creates disharmony," and "insubordinate comments." Id. at 606-07.

Ms. Bertsch then brought her sexual harassment and retaliation claims to the Utah Labor Commission, which ruled in her favor in November 2007. Id. at 616-627. As Overstock appealed, Ms. Bertsch got a right-to-sue letter from the EEOC. She filed this suit in January 2010. Ms. Bertsch's position is that she worked in the face of Mr. Latimer's sexual harassment, which Overstock knew but ignored. When she complained, the company criticized her, threatened reassignment, and eventually fired her. Overstock's view is that she was a difficult, high-maintenance employee who left the company with no choice but to part ways.

Discussion

We view the summary judgment evidence in the light most favorable to the non-movant, applying the same standard as the district court; the non-movant must come forward with significantly probative evidence demonstrating a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

A.    Hostile Work Environment

To establish that Mr. Latimer's alleged misogyny and dislike of her created a hostile work environment, Ms. Bertsch must present evidence that the workplace was "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment" and that she was "targeted for harassment" because of her gender. Herrera v. Lufkin Indus., Inc., 474 F.3d 675, 680 (10th Cir. 2007); 42 U.S.C. § 2000e-2. The company, as opposed to the individual directly responsible for the misbehavior, is liable, on a negligence theory, "if it knew or should have known about the conduct and failed to stop it." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 759 (1998).

Overstock denies any such atmosphere but presses its main point—which the district court found "dispositive," Bertsch v. Overstock, No. 10-cv-37-DAK, 2011 WL 2117615, at *6 (D. Utah May 27, 2011)—that it took "prompt and effective remedial action" by conducting an investigation into her complaints and

- 7 -

by issuing Mr. Latimer a disciplinary notice. Aplee. Br. 16. The question at the summary judgment stage is whether her allegations and the record, viewed favorably to her, could allow a jury to find in her favor. Morris v. City of Colo. Springs, 666 F.3d 654, 660 (10th Cir. 2012).

Title VII's prohibition on sexual harassment operates to protect employees from gender-related misconduct that disrupts job performance. A line must be drawn between actionable conduct and conduct that is merely insensitive, tasteless, or vulgar. Title VII's mandate is not to ensure workplace harmony or create a finishing school. A hostile work environment requires conduct so "severe" or "pervasive" that the very terms of one's employment are altered.

We view the facts in Ms. Bertsch's favor, and while none of the summary judgment evidence may meet the severity threshold, there is a genuine issue of material fact whether the conduct was pervasive enough to find in her favor. Yet her claim still must be dismissed, because Overstock's prompt remedial action precludes employer liability. An "employer's liability for allowing a sexually hostile work environment after it is reported to the employer by the employee arises only if the employer fails to take adequate remedial and preventative responses to any actually or constructively known harassment." Holmes v. Utah, Dep't. of Workforce Servs., 483 F.3d 1057, 1069 (10th Cir. 2007).

Ms. Bertsch says she complained about Mr. Latimer's poster; so did others,

and he was ordered to remove it. Aplt. App. 421. In February 2004, after the email incident, she complained about his coarse remarks and within days he received a written warning to "[a]bstain from making derogatory remarks about sex or gender." Id. at 603. This is the extent of her formal complaints and Overstock's corrective action. Ms. Bertsch calls Overstock's efforts a "sham," Aplt. Br. 39-40, relying on Baty v. Willamette Indus., Inc., 172 F.3d 1232, 1242 (10th Cir. 1999), but her case is a far cry from the facts there, which involved much more egregious harassment and yet the employer, after investigating, concluded that "no harassment had taken place."

Ms. Bertsch also faults Overstock for not "following up" to see if the problem had disappeared, Aplt. Br. 40, yet she does not point to anything specific or concrete to show that Mr. Latimer persisted. She observes that there is no evidence that Mr. Latimer *didn't* stop. Aplt. App. 867. But if she wished to claim that harassment continued, it was her burden to produce significantly probative evidence of it; to defeat summary judgment on this properly supported employer defense, she has the burden of producing contrary evidence. Otherwise a "stoppage of the harassment by the disciplined perpetrator evidences effectiveness." Adler v. Wal-Mart Stores, 144 F.3d 664, 676 (10th Cir. 1998).

B.    Retaliation

Rarely will a plaintiff have direct evidence of a retaliatory motive; most

plaintiffs attempt an "indirect," burden-shifting case. Twigg v. Hawker Beechcraft Corp., 659 F.3d 987, 999-1000 & fn. 8 (10th Cir. 2011). A prima facie retaliation case is made if the plaintiff shows that she engaged in protected opposition to discrimination, and, as a result, suffered materially adverse action, i.e., action sufficient to "dissuade" a reasonable worker from making her complaint. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); 42 U.S.C. § 2000e-3(a). An employer generally offers a legitimate, non-retaliatory reason for its decision. Twigg, 659 F.3d at 998. The plaintiff must then show that the employer's reason was a mere pretext for retaliation. Id. at 988-99.

The district court erred in relying on a pre-Burlington Northern case, Haynes v. Level 3 Communications, 456 F.3d 1215 (10th Cir. 2006), for the proposition that the disciplinary action taken against Ms. Bertsch was materially adverse only if it actually effected a significant change in her employment status, rather than Burlington Northern's rule of possible dissuasion of an employee from making or supporting a charge of discrimination. Second, it erred in refusing to consider pretext in determining there was no evidence of a causal connection between her complaints about Latimer's conduct and her termination, contrary to Proctor v. United Pacel Service, 502 F.3d 1200, 1209 (10th Cir. 2007).

Ms. Bertsch claims to have been under the impression in February 2004 that her allegations of harassment, not the email incident, instigated Overstock's investigation into her and Mr. Latimer. Aplt. App. 74, 475. As she sees it, she

complained of mistreatment, then ten days later was "shocked" to find *herself* "singled out" for hostility, threatened with reassignment, and fired some three months after that. Id. at 217; Aplt. Br. 46. Overstock maintains that her attitude and poor performance (the email exchange being "one instance that happened to be caught on paper") tell us all we need to know about her termination. Aplt. App. 316, 361.

The problem with summary judgment here is that important facts remain in dispute. Did Ms. Bertsch actually inform her supervisors of Mr. Latimer's harassment, as she suggests, or did she say nothing of the sort, as Overstock claims? Compare id. at 468, 588, 613 (Bertsch) with 797-98 (Simon) and 747 (Popelka). Could a jury wonder why Ms. Bertsch was disciplined over the email exchange, even though Mr. Latimer was the one who in fact publicized their dispute? Was the threat of reassignment to the warehouse a sort of demotion, as she felt, or a sensible solution to the problem of co-worker squabbles, as Overstock claims? And was she sent or not? If not, what does that say about the claim by those who fired her that she caused tensions once she "got" there?

Poor performance, to be sure, is the quintessential legitimate, non-discriminatory reason for termination, but summary judgment, reviewed de novo, can be affirmed only if Overstock shows that there is no genuine dispute of material fact; a dispute exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. Without hinting at

- 11 -

the strength of Ms. Bertsch's claim, and drawing reasonable inferences in her favor, a jury *could*, on this evidence, find in her favor on this claim. That she did not prevail on her hostile work environment claim is no bar; she need only have a reasonable good-faith belief she is opposing discrimination. Crumpacker v. Kan. Dep't. of Human Resources, 338 F.3d 1163, 1171-72 (10th Cir. 2003). Of course, the evidence at trial may differ, and a trial no doubt will explore Ms. Bertsch's falling on the sword when confronted and later recanting.

C.     Disparate Treatment

The court denied Ms. Bertsch's request—made in her motion opposing summary judgment, Aplt. App. 109—to add a claim of gender-based disparate treatment. "Latimer was written up several times for the same offense for which Bertsch was terminated," she says, "and yet he was not terminated." Aplt. Br. 43. They worked in the same department under a common supervisor. And she says she only learned of his record of write-ups when she got the documents from Overstock during discovery. Aplt. App. 871.

Even though Ms. Bertsch has always contested her termination, she has never done so, until this motion, under a theory of disparate treatment. This claim is thus a new one subject to our jurisprudence on administrative exhaustion. "A plaintiff must generally exhaust his or her administrative remedies prior to pursing a Title VII claim in federal court." <u>Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Services</u>, 165 F.3d 1321, 1326 (10th Cir. 1999). This court has

held the exhaustion requirement is a jurisdictional prerequisite to suit under Title VII. Shikles v. Sprint/United Management Co., 426 F.3d 1304, 1317 (10th Cir. 2005). Therefore, a plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter." Simms, 165 F.3d at 1326. Ms. Bertsch must timely file her disparate treatment claim with the EEOC or Utah Labor Commission and receive a right to sue letter before this court has jurisdiction to hear her claim. Because this court has no jurisdiction in the first place, amendment through relation back does not apply.

The district court's judgment dismissing the hostile work environment sexual harassment claim and denying leave to amend is affirmed; it is reversed insofar as it dismisses the retaliation claim.

AFFIRMED in part, REVERSED in part, and REMANDED.