**FILED**
United States Court of Appeals
Tenth Circuit

**May 27, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SABREEN GAD,

      Plaintiff - Appellant,

v.

KANSAS STATE UNIVERSITY,

      Defendant - Appellee.

No. 14-3050

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. 2:12-CV-02375-EFM)**

---

Danielle N. Davey (Alan V. Johnson with her on the briefs), Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., Topeka, Kansas, for Appellant.

Peter J. Paukstelis, Office of General Counsel, Kansas State University, Manhattan, Kansas, for Appellee.

---

Before **TYMKOVICH**, **GORSUCH**, and **BACHARACH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

Sabreen Gad filed a complaint with the Equal Employment Opportunity Commission against Kansas State University, alleging that she was discriminated against in her effort to obtain a promotion to a tenure-track faculty position.

Although the EEOC sent her a formal charge document to sign and verify, as both Title VII and EEOC regulations require, she never did so. Nevertheless, after the EEOC elected not to pursue her case, she brought a Title VII suit against KSU.

This appeal requires us to decide whether Title VII's requirement that a claimant verify the charges against an employer is a jurisdictional prerequisite to suit. If that is the case, the district court correctly concluded that it lacked Article III subject-matter jurisdiction and dismissed the complaint. If, on the other hand, the verification requirement is a non-jurisdictional condition precedent to suit, it can be waived without defeating our jurisdiction. In that case, the requirement does not affect our subject-matter jurisdiction and federal courts are free to entertain the complaint and the defenses to it.

We conclude this verification requirement is non-jurisdictional and does not divest the federal courts of subject-matter jurisdiction. Title VII does not make the verification requirement jurisdictional, and the failure to comply with the requirement is not a conclusive impediment to suit. Like other conditions precedent, verification can be asserted as a defense to a claim by the defendant. But it cannot take away our power as federal courts to resolve live cases or controversies under Article III.

Consequently, exercising jurisdiction under 28 U.S.C. § 1291, we REVERSE the district court's contrary decision and REMAND for further proceedings.

# I. Background

KSU hired Professor Gad in 2010 as a part-time assistant professor in the geology department. She subsequently requested that KSU either promote her to a full-time professorship position or promote her to membership on the graduate faculty. She never received either promotion, however, and she believed KSU discriminated against her by creating and giving similar positions to other individuals.

Consequently, in March 2012, Gad filed a claim with the EEOC, alleging religious, sex, and national-origin discrimination. She completed the required EEOC intake questionnaire form and prepared a letter to the EEOC summarizing her claims. She signed both the form and the letter, but never "verified" either by affirming them under penalty of perjury or before a person authorized to administer oaths, as EEOC regulations require. *See* 29 C.F.R. § 1601.3.[1]

An EEOC investigator assigned to the case later spoke with Gad regarding her discrimination claims. He "told her [he] would send her a charge for signature." App. 105. That charge—EEOC Form 5—includes a box for the complainant to sign under penalty of perjury, which satisfies the verification

---

[1] The regulations provide that "the term verified shall mean sworn to or affirmed before a notary public, designated representative of the [EEOC], or other person duly authorized by law to administer oaths and take acknowledgements, or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3.

requirement. On the same day, the investigator mailed Gad Form 5 along with a letter that explained what the form meant and the next steps in the EEOC's investigation. The letter contained two directions pertinent here. First, it informed Gad that if the EEOC did not "receive [her] signed charge within 30 days, [it would be] authorized to dismiss [her] charge and issue [her] a right to sue letter." *Id.* at 107. Second, it informed her that "proper handling of this action by the Commission" required her to "sign and date the charge" and "[r]eturn the signed charge to this office." *Id.* The only place to sign the charge was a blank directly below the words, "I declare under penalty of perjury that the above is true and correct." *Id.* at 109. According to Gad, she never signed or returned the form because the investigator "mentioned something that I don't have to return . . . the signing form." *Id.* at 89–90.

The investigator also mailed a notice to KSU that Gad had filed an "unperfected" charge of discrimination. *Id.* at 167. The notice informed KSU that "[n]o action is required by you at this time." *Id.*

In early April, the EEOC investigator and Gad spoke again. The investigator's notes of the conversation report that he told Gad that "further investigation will unlikely result in a violation" and that, if so, the EEOC would issue her a "Dismissal and Notice of the Right to Sue." *Id.* at 169. On April 19, the EEOC issued Gad the right-to-sue notice, on which KSU was carbon copied.

In June, Gad sued KSU in federal district court. KSU's answer stated generally that Gad had failed to exhaust her administrative remedies, but said nothing specifically about Gad's failure to verify. After filing its answer but before summary judgment, KSU obtained Gad's EEOC file, which contained a copy of Gad's unverified Form 5.

In its motion for summary judgment, KSU argued the court lacked jurisdiction because Gad failed to exhaust her administrative remedies by not verifying her EEOC charge. The district court agreed, noting our holding in *Shikles v. Sprint/United Management Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005), that exhaustion of administrative remedies is a jurisdictional prerequisite to suit. Relying on that principle, the court concluded that Gad's failure to satisfy Title VII's verification requirement was a failure to exhaust administrative remedies and that it thus lacked jurisdiction.[2]

## II. Analysis

KSU argues that a plaintiff's failure to satisfy the verification requirement divests us of subject-matter jurisdiction and cannot be waived. As we discuss below, we conclude otherwise.

___

[2] It is true that, as KSU mentions, courts "need not decide whether exhaustion is jurisdictional [where] there is no question of waiver or forfeiture." *McQueen ex rel. McQueen v. Colo. Springs Sch. Dist. No. 11*, 488 F.3d 868, 873 (10th Cir. 2007). The district court did not choose that path, and as we discuss below, we only address the jurisdictional question and elect not to resolve the factual question of waiver for the first time on appeal.

## A. *Subject-Matter Jurisdiction*

The federal courts are courts of limited subject-matter jurisdiction. *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1225 (10th Cir. 2004). And since we have limited jurisdiction, we "may only hear cases when empowered to do so by the Constitution and by act of Congress." *Id.* (internal quotation marks omitted). Our subject-matter jurisdiction is a constitutional prerequisite to hearing a case and "because it involves a court's power to hear a case, can never be forfeited or waived." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Thus, we always have an independent obligation—no matter the stage of litigation—to consider whether a case creates a live case or controversy and belongs in federal court.

In this case, the question is whether Title VII's verification requirement is a prerequisite to our subject-matter jurisdiction. Title VII specifically gives us subject-matter jurisdiction as a general matter in 42 U.S.C. § 2000e-5(f)(3).[3] But as a condition to filing suit in federal court, Title VII also requires claimants to

---

[3] In pertinent part, that subsection provides that "[e]ach United States district court . . . shall have jurisdiction of actions brought under [Title VII]." 42 U.S.C § 2000e-5(f)(3). Of course, 28 U.S.C. § 1331 would authorize us to exercise subject-matter jurisdiction absent Title VII's jurisdictional provision, since Title VII cases arise "under the . . . laws . . . of the United States." *Arbaugh*, 546 U.S. at 505. But when Congress enacted Title VII, federal-question suits had an amount-in-controversy threshold. Thus, the jurisdictional requirement was necessary to ensure that all suits meeting Title VII's other requirements could be heard in federal court. Congress has since eliminated that threshold. But, as we discuss below, the Court plainly still considers it key for interpretative purposes whether a requirement is located in the jurisdictional subsection.

submit a "charge" to the EEOC.  That submission must "be in writing under oath or affirmation" and "contain such information and be in such form as the [EEOC] requires."  42 U.S.C. § 2000e-5(b).  EEOC regulations interpreting the statute reiterate that a charge "shall be in writing and signed and shall be verified."  29 C.F.R. § 1601.9.  And the regulations clarify that "verified" means "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury."  29 C.F.R. § 1601.3.

Is this verification requirement a jurisdictional prerequisite to a Title VII suit?  The law is not clear.  In several cases analyzing other aspects of Title VII, we have concluded that some Title VII requirements are not jurisdictional prerequisites to suit.  For example, in *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1167 (10th Cir. 2007), we held that § 2000e-5's "mandatory time limit for filing charges with the EEOC is not a jurisdictional prerequisite" and is "thus subject to waiver, estoppel, and tolling when equity requires."  *See also EEOC v. JBS USA, LLC*, 794 F. Supp. 2d 1188, 1201 (D. Colo. 2011) (noting that "not every defect in the administrative process defeats jurisdiction").

But we said in *Shikles* that "a plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under Title VII—not merely a condition precedent to suit."  *Shikles*, 426 F.3d at 1317.

Exhaustion requires "the filing of a charge of discrimination with the EEOC," *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007), and charges must be verified. Thus, one might conclude a plaintiff has not complied with Title VII's required prerequisites to suit—i.e., he has not fully exhausted—until he verifies. That might appear to require the conclusion that verification is necessarily jurisdictional. *But see Green v. Donahoe*, 760 F.3d 1135, 1140 (10th Cir. 2014) (noting that "the untimeliness of an administrative claim, although an exhaustion issue . . . is not jurisdictional"), *cert. granted*, 83 U.S.L.W. 3354, 2015 WL 1879779 (Apr. 27, 2015). Thus, our cases provide no dispositive answer.

Nor has the Supreme Court directly confronted this question. Although the Court has held that Title VII includes a specifically denominated "jurisdictional provision, 42 U.S.C. § 2000e-5(f)(3)," *Arbaugh*, 546 U.S. at 515, that provision has nothing to say about verification. But the Supreme Court has provided the principles necessary to resolve this jurisdictional question in several instructive cases.

In the first, *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982), the Court addressed § 2000e-5's statutory time limit for filing EEOC charges. *Id.* at 393. The question was whether compliance with the statutory time limit was "a jurisdictional prerequisite to bringing a Title VII suit in federal court" or whether it was "subject to waiver and estoppel." *Id.* at 392. In choosing the latter, the Court made two important points. First, "[t]he provision granting district courts

-8-

jurisdiction under Title VII, 42 U.S.C. §§ 2000(e) and (f), does not limit jurisdiction to those cases in which there has been a timely filing."[4]  *Id.* at 393. Second, the Court emphasized that restrictive readings of Title VII are "particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process."  *Id.* at 397.

More recently, in *Edelman v. Lynchburg College*, 535 U.S. 106 (2002), the Court upheld an EEOC regulation "permitting an otherwise timely filer to verify a charge after the time for filing has expired."  *Id.* at 109.  That regulation permitted an individual to amend a charge "to cure technical defects or omissions, including failure to verify the charge."  29 C.F.R. § 1601.12(b).  Title VII requires—albeit in separate subsections—that a charge be verified and also be filed within the limitations period.  *Id.* at 111.  The Court rejected a lower court decision finding the provision was contrary to the statute.

First, the Court noted the verification and timely filing requirements are located in different statutory subsections and have separate purposes—thus reemphasizing the importance of examining a provision's precise location in the structure of Title VII to determine its meaning.  *See id.* at 112–13.  Second, the

------

[4]  Notably, since *Zipes*, Congress has amended the statute to combine subsections (e) and (f) into one subsection: 42 U.S.C. § 2000e-5(f).  Today's jurisdictional subsection is 42 U.S.C. § 2000e-5(f)(3).  *Arbaugh*, 546 U.S. at 514–15.  The timeliness provision in *Zipes*, at that time in subsection (d) and outside the jurisdictional subsections, is now in subsection (e)—still outside the jurisdictional subsection.

verification requirement is intended to protect employers and perhaps co-workers "from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury." *Id.* at 113. But that purpose "demands an oath only by the time the employer is obliged to respond to the charge, not at the time an employee files it with the EEOC." *Id.* Third, it reiterated the importance of considering Title VII's nature as a "remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process" and the consequent need to protect the layperson from "forfeiting his rights inadvertently." *Id.* at 115. Finally, the Court approvingly quoted Wright and Miller for the proposition that "[e]ven if a federal rule or statute requires verification, a failure to comply does not render the document fatally defective." *See id.* at 116 n.12 (quoting 5A Charles Alan Wright et al., Fed. Prac. & Proc. § 1339 (2d ed. 1990)).

Next, in 2006, the Court held in *Arbaugh* that Title VII's 15-or-more-employees requirement was non-jurisdictional and thus waivable by a defendant. *Arbaugh*, 546 U.S. at 503–04. Following *Zipes*, it noted that the 15-employee threshold, rather than appearing in Title VII's jurisdictional subsection, 42 U.S.C. § 2000e-5(f)(3), "appears in a separate provision that does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Id.* at 515 (quoting *Zipes*, 455 U.S. at 394) (internal quotation marks omitted).

Importantly, the Court stated, "[n]othing in the text of Title VII indicates that Congress intended courts, on their own motion, to assure that the employee-numerosity requirement is met." *Id.* at 514. Thus, "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 516; *see also Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 824 (2013) (reiterating that courts should not treat restrictions as jurisdictional unless Congress has "clearly state[d]" that a rule is jurisdictional); *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) (same); *Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 783 n.2 (10th Cir. 2013) (collecting recent Supreme Court cases).

Most recently, in *United States v. Kwai Fun Wong*, 135 S. Ct. 1625 (2015), the Court reiterated its framework for analyzing jurisdictional claims. "[P]rocedural rules . . . cabin a court's power only if Congress has 'clearly state[d]' as much." *Id.* at 1632 (citing *Auburn Reg'l*, 133 S. Ct. at 824). And, "in applying that clear statement rule," courts employ "traditional tools of statutory construction" to determine whether "Congress imbued" a requirement "with jurisdictional consequences." *Id.*

We distill several key principles from these cases. *First*, a Title VII statutory requirement's classification as jurisdictional or non-jurisdictional turns in large part on whether it is located in Title VII's jurisdictional subsection—42 U.S.C. § 2000e-5(f)(3). Both *Zipes* and *Arbaugh* turned on that distinction. *See*

-11-

*Arbaugh*, 546 U.S. at 515; *Zipes*, 455 U.S. at 393. Just this year, we noted this principle's general applicability: Statutes that speak "to the rights or obligations of parties to a lawsuit," rather than "speak[ing] clearly to the courts' statutory or constitutional *power* to adjudicate the case," establish "claim-processing rules, and should not be treated as jurisdictional prescriptions." *Barnes v. United States*, 776 F.3d 1134, 1146 (10th Cir. 2015) (internal quotation marks omitted).

*Second*, recognizing that non-lawyers are initiating Title VII processes, the courts should be careful in interpreting procedural rules to cause inadvertent forfeiture of rights. *Third*, verification should protect employers from the burden of responding to frivolous claims or later finding themselves in court over claims of which they had no notice. *Finally*, *Edelman* endorses the principle that a failure to verify as required by a federal rule will not render the document in question fatally defective.

## B. *Verification*

Applying these principles to the verification requirement, it is not jurisdictional. First, neither the statutory text nor the structure of Title VII provides a "clear statement" that jurisdiction turns on verification. In Title VII cases, we primarily look to whether a limitation is contained in Title VII's jurisdictional subsection to determine Congressional intent. *See Arbaugh*, 546 U.S. at 515; *Zipes*, 455 U.S. at 393–94. Like the timely filing requirement in *Zipes* and the 15-or-more-employee requirement in *Arbaugh*, verification "appears

-12-

in a separate provision that does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Arbaugh*, 546 U.S. at 515 (internal quotation marks omitted). Second, our conclusion follows the principle disfavoring interpretations that might lead to inadvertent forfeiture of Title VII rights by the non-lawyers initiating Title VII processes. *See Edelman*, 535 U.S. at 115; *Zipes*, 455 U.S. at 397. Yet it does not hinder the purpose of the verification rule: protecting employers and co-workers "from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury." *Edelman*, 535 U.S. at 113. Because verification remains a Title VII requirement, its non-jurisdictional nature does not bar an employer from raising a plaintiff's failure to satisfy the requirement as a defense. But "[w]hen an employer files a response on the merits [without identifying a known verification defect], he foregoes the protection that the requirement affords"—i.e., he has waived any verification objection. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 263 (3d Cir. 2006).

Finally, this conclusion squares with the *Edelman* Court's statement that, even "if a federal rule or statute requires verification," failure to verify will not "render the document fatally defective." *Edelman*, 535 U.S. at 116 n.12 (quoting 5A Charles Alan Wright et al., Fed. Prac. & Proc. § 1339 (2d ed. 1990)). Indeed, because verification "is now the exception rather than the rule in federal civil practice," it is generally the case that "any objection to a failure to comply with a

verification requirement must be raised immediately or not at all." 5A Charles Alan Wright et al., Fed. Prac. & Proc. § 1339 (3d. ed., Sept. 2014 update).

In sum, we conclude that the verification requirement is not jurisdictional.

In reaching this conclusion, we must still consider *Shikles*'s general statement that the exhaustion of administrative remedies is "a jurisdictional prerequisite to suit under Title VII," *Shikles*, 426 F.3d at 1317. After all, we have identified multiple exhaustion requirements not formally located in Title VII's jurisdictional subsection. *See, e.g.*, *Green*, 760 F.3d at 1140 (noting requirement that plaintiff "show that the claim [filed in district court] is within the scope of the administrative investigation that could reasonably be expected to follow from the allegations raised in the charge"); *id.* (noting requirement that plaintiff submit charge in a timely fashion); *Jones v. Runyon*, 91 F.3d 1398, 1400 n.1 (10th Cir. 1996) (observing that filing an EEOC charge is exhaustion requirement); *Khader v. Aspin*, 1 F.3d 968, 971 (10th Cir. 1993) (referring to requirement that plaintiff cooperate with the EEOC); *cf. Shikles*, 426 F.3d at 1314–15 (relying on *Khader*'s language to impose a similar cooperation requirement on plaintiffs under the Age Discrimination in Employment Act (ADEA)). In a vacuum, the language from *Shikles* might appear to enshrine all exhaustion requirements—including the verification requirement—as jurisdictional prerequisites, regardless of whether Congress evidenced intent to characterize them as such by placing them in Title VII's jurisdictional subsection. Indeed, in both *Khader* and *Shikles*, we held that

-14-

failure to cooperate was a jurisdictional bar simply because it is an exhaustion requirement. *Id.* at 1317; *Khader*, 1 F.3d at 970–71.

That logic, however, is at odds with the Supreme Court's instructions in subsequent cases and cannot be squared with current law.[5] Since *Shikles*, the Supreme Court in *Arbaugh* and *Kwai Fun Wong* reemphasized that we should not treat requirements as jurisdictional without express congressional direction.[6] *See Arbaugh*, 546 U.S. at 516; *see also Auburn Reg'l*, 133 S. Ct. at 824. To the extent our previous cases would require a contrary result, these "superseding contrary decision[s]" of the Supreme Court "control[] our analysis." *United States v. Hathaway*, 318 F.3d 1001, 1006 (10th Cir. 2003); *see also Clark v. Wilson*, 625 F.3d 686, 691 & n.3 (10th Cir. 2010).

Moreover, the Supreme Court has instructed that "drive-by jurisdictional rulings . . . have no precedential effect." *Steel Co. v. Citizens for a Better Env't*,

---

[5] Indeed, in *Shikles* itself we recognized the tension between classifying cooperation as a requirement of Title VII and the rule against "read[ing] requirements into Title VII . . . beyond those expressly provided by Congress." *Shikles*, 426 F.3d at 1314 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798–99 (1973)). But *Khader* and our policy of interpreting Title VII and the ADEA harmoniously compelled us to treat cooperation as an exhaustion requirement, which in turn compelled us to treat failure to cooperate as a jurisdictional bar. *See id.* at 1315 (noting that "courts have held that Title VII contains a cooperation requirement, despite the Supreme Court's admonition that no requirements beyond those in the statute should be imposed"). Our analysis in this case should resolve that tension.

[6] Our latest published opinion stating the *Shikles* rule was *Bertsch v. Overstock.com*, 684 F.3d 1023, 1030 (10th Cir. 2012).

523 U.S. 83, 91 (1998). *Shikles*'s statement that Title VII exhaustion is a "jurisdictional prerequisite" can be traced back to two cases, both of which stated the proposition with little extended analysis. *See Sampson v. Civiletti*, 632 F.2d 860, 862 (10th Cir. 1980) (citing, without further discussion, *Bragg v. Reed*, 592 F.2d 1136, 1138 (10th Cir. 1979)). Significantly, *Bragg* does not address the issue at all beyond citing (without expressly adopting) the district court's order, which only asserted that "[t]he timely exhaustion of the administrative remedies [was] a jurisdictional prerequisite to the bringing of this civil action." *Bragg*, 592 F.2d at 1138. *Bragg* did say that plaintiffs "must exhaust administrative remedies before filing an action," *id.*, but that does not address the question of whether a failure to satisfy a particular requirement robs the court of jurisdiction. Both cases preceded not only *Arbaugh* but also *Zipes*, and the subsequent development of the law underscores the limited force our earlier cases retain today.[7]

Holding verification non-jurisdictional does not imply any diminution in the need for plaintiffs to comply with this Title VII requirement. Exhaustion still serves the important purposes of "protect[ing] employers by giving them notice of the discrimination claims being brought against them and providing the EEOC . . . with an opportunity to conciliate the claims." *Green*, 760 F.3d at 1140 (internal quotation marks omitted). Verification is particularly important because it helps

---

[7] In fact, as far as we can tell, none of the cases stemming from *Bragg* actually grappled with the propriety of calling exhaustion jurisdictional.

weed out frivolous or harassing claims. *See Edelman*, 535 U.S. at 113. And serious verified claims may provide the impetus for settlement, avoiding federal court action altogether.

Thus, an employer that identifies and raises a verification defect may still achieve the dismissal of a plaintiff's suit. But because Congress has not explicitly instructed that a failure to verify deprives us of jurisdiction, Supreme Court precedent requires us to hold it is a "waivable claim processing provision[] that do[es] not invoke our subject matter jurisdiction." *Muskrat*, 715 F.3d at 783 (internal quotation marks omitted).

Finally, although our conclusion is dictated by Supreme Court precedent, other circuits have followed a similar course. For example, in *Buck*, the Third Circuit observed that Title VII clearly makes verification "mandatory" and reiterated verification's purpose of protecting employers from having to respond to frivolous charges. *Buck*, 452 F.3d at 262. But that did not end the analysis. The court nonetheless held verification is non-jurisdictional, pointing to *Zipes*'s instruction to look to the "provision granting district courts jurisdiction under Title VII." *Id.* (quoting *Zipes*, 455 U.S. at 393). Because the jurisdictional subsection does not limit jurisdiction to cases where the charge has been properly verified, the court concluded that verification was "subject to waiver when equity so requires." *Id.* at 262–63 (internal quotation marks omitted). Similarly, in *Price v. Southwestern Bell Telephone Co.*, 687 F.2d 74 (5th Cir. 1982), the Fifth

Circuit applied *Zipes*, emphasizing the need to protect the layman complainant from inadvertent forfeiture while remanding for "a possible EEOC waiver" of verification. *Id.* at 79.

We could find only one case holding the requirement jurisdictional, *Vason v. City of Montgomery*, 240 F.3d 905 (11th Cir. 2001).[8] There, the Eleventh Circuit summarily affirmed the district court's grant of summary judgment on the grounds that verification is mandatory. *See id.* at 907. The court acknowledged, but did not engage, the plaintiff's argument that verification was waivable and that the EEOC had in fact waived it. *Id.* To be sure, that court never explicitly dubbed the requirement *jurisdictional*, and a requirement is not jurisdictional just because it is mandatory. Nevertheless, its holding strongly suggests an implicit conclusion that the requirement was jurisdictional. Because *Vason* did not analyze the issue in any detail and precedes the Supreme Court's new analytical framework, we find it unpersuasive.

---

[8] Both parties suggest that *Balazs v. Liebenthal*, 32 F.3d 151 (4th Cir. 1994), also held the requirement jurisdictional, but that case dealt with whether the plaintiff could amend his charge to provide the necessary verification after the plaintiff had received a right-to-sue letter, instituted a suit, and had been served with a motion to dismiss based on non-verification. *Id.* at 153, 157. It did not address whether verification is waivable.

*C. Waiver*

The district court did not reach waiver because it dismissed the case on jurisdictional grounds. We remand for the district court to undertake that analysis in the first instance.

Several points are worth noting in considering waiver. As we mentioned above, verification is a condition precedent. It is not an affirmative defense in the classical sense—a meaningful distinction in the Title VII context. In this context, a condition precedent is a "duty [Title VII] imposes" that "serves as a necessary precondition to filing a lawsuit." *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1651 (2015) (discussing conciliation, which is a condition precedent to suit by the EEOC). Our cases indicate verification is such a duty. For example, in *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160 (10th Cir. 2007), we rejected plaintiffs' argument that Title VII's timely filing requirement is an affirmative defense, holding instead that it is a "condition precedent" to suit, which made "the obligation to demonstrate timeliness . . . a burden for plaintiffs to carry" by properly pleading it. *Id.* at 1167 & n.11; *see also* Viviana Aldous, Comment, *Timed Out of Title VII Claims: Which Party Should Bear the Burden of Showing Compliance with Title VII Timing Requirements?*, 2014 U. Chi. Legal F. 697, 710–13 (exploring distinction and the implications of placing burden on plaintiff instead of defendant in timely filing context).

We noted two important considerations in *Montes*. First, the timely filing deadlines are "integrated into the statutory section that delineates the various other steps a prospective plaintiff must satisfy before being given the keys to the courthouse door to file a complaint," unlike "traditional affirmative defenses which are separate bars to suit." *Montes*, 497 F.3d at 1168. Second, "practical realities" supported placing the burden on plaintiffs, who "enjoy superior access to the evidence necessary to prove their compliance with the statutory filing deadline." *Id.*

As in *Montes,* the verification requirement is a condition precedent. It is located in the same subsection—42 U.S.C. § 2000e-5(b)—as the conciliation requirement, which is a condition precedent to suit by the EEOC, *EEOC v. Zia Co.*, 582 F.2d 527, 532 (10th Cir. 1978). The subsection's structure indicates that verification must precede conciliation, since conciliation should only occur after the EEOC has investigated a verified charge and found there is "reasonable cause to believe that the charge is true." 42 U.S.C. § 2000e-5(b); *see also Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 359 (1977) (describing process). And, because the statute contemplates the investigation process beginning with a verified charge, *see* 42 U.S.C. § 2000e-5(b), there is no reason to think verification is any less a condition precedent in cases where the EEOC finds no reasonable cause to believe the charge is true. Thus, like the timely filing deadlines, the verification requirement is "integrated into" a statutory section

-20-

"delineat[ing]" steps plaintiffs must satisfy before receiving leave to sue. *Montes*, 497 F.3d at 1168. And, as with timely filing, verification and proof of verification lie chiefly within the plaintiff's control.

Nor does classification as an affirmative defense make sense. A Title VII affirmative defense—such as a statute of limitations—can concede "that there has in fact been discrimination and then justif[y] this admitted discrimination." Hugh Joseph Beard, Jr., *Title VII and Rule 301: An Analysis of the* Watson *and* Atonio *Decisions*, 23 Akron L. Rev. 105, 140–41 (1989). Conversely, an employer raising a failure to verify as a basis for dismissal need admit no discrimination. The flaw is procedural, not substantive—it is the plaintiff's failure to properly comply with the requirements Congress and the EEOC established.

We also note that Gad only argues the EEOC waived the requirement, not KSU. Although the relevant principles show both that verification is non-jurisdictional and that an employer that fails to raise a known verification defect has waived the issue as a potential defense, it does not necessarily follow that the EEOC can waive the requirement unilaterally. After all, that would allow cases where an employer, through no fault of its own, suffers "the disruption and expense of responding to a claim" despite the lack of verification demonstrating the "complainant is serious enough and sure enough to support [the claim] by oath subject to liability for perjury." *Edelman*, 535 U.S. at 113. *Buck* followed that logic. *See Buck*, 452 F.3d at 265 (premising decision "on the fact that the School

District had adequate information, *i.e.*, a copy of the detailed but unverified charge, on which to raise the issue" and holding that "where, as here, an employer has actual notice of a discrimination charge and chooses to respond to the merits of the claim before the EEOC without asserting lack of verification as a defense it waives its right to secure dismissal of the federal court proceedings on that basis"). Moreover, verification provides notice and an opportunity for the employer to investigate, promoting the prompt administration of discrimination complaints and possible settlement.

But we also recognize that a rigid rule can result in a Title VII complainant inadvertently forfeiting his or her rights. That suggests a rule where non-compliance might be excused, at least in extreme circumstances where negligent EEOC conduct would mislead a reasonable layperson into thinking he need not verify. *Price* apparently allows such a result. *See Price*, 687 F.2d at 79 (holding requirement non-jurisdictional and remanding for "a possible EEOC waiver of that requirement"); *see also B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1102 (9th Cir. 2002) ("A Title VII complainant is not charged with the commission's failure to perform its statutory duties." (internal quotation marks omitted)); *Forehand v. Fla. State Hosp.*, 89 F.3d 1562, 1571 (11th Cir. 1996) ("[A]ny

deficiency in the EEOC's performance of its duties should not adversely affect a plaintiff's right to sue.").[9]

We need not decide the scope or contours of a waiver rule here, particularly because the district court may not even need to reach the question on remand if it concludes that, assuming an EEOC waiver is possible, no such waiver occurred.

## III.  Conclusion

Because Title VII's verification requirement is not jurisdictional, we REVERSE and REMAND this case for the district court to determine whether the verification requirement was waived here.

---

[9] In the related context of Title VII's timely filing requirement, "equitable tolling may be appropriate where a plaintiff has been lulled into inaction by . . . state or federal agencies." *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 615 (10th Cir. 1988) (internal quotation marks omitted). Of course, the timely filing requirement, no less than the verification requirement, works to protect employers. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 256–57 (1980) (noting that Title VII's "limitations periods . . . protect employers from the burden of defending claims arising from employment decisions that are long past").