FILED
United States Court of Appeals
Tenth Circuit

March 30, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JANE DOE, minor; ANGELA
HARRISON, Jane Doe's mother, as next
friend,

     Plaintiffs - Appellees,

v.

BROCK HUTCHINSON,

     Defendant - Appellant,

and

USD 237, THE SMITH CENTER
SCHOOL DISTRICT,

     Defendant.

No. 17-3070
(D.C. No. 2:16-CV-02801-JWL-GLR)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **KELLY**, and **MATHESON**, Circuit Judges.
_____

    Brock Hutchinson appeals the district court's denial of his motion to dismiss

based on qualified immunity. We conclude that Jane Doe adequately pled a violation

of her equal protection rights, and that the law regarding hostile school environment

claims was sufficiently clear as to put any reasonable teacher on notice that the

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

alleged conduct was a violation. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

We draw the following facts from the complaint. Hutchinson is a teacher and football coach at Smith Center High School, located in Smith Center, Kansas. Doe began attending the school in Fall 2013. She alleges that Hutchinson routinely and openly spoke to and about female students in sexualized terms. She claims that Hutchinson's conduct had been ongoing for several years, and that it was common knowledge among school employees that Hutchinson had been involved in an inappropriate relationship with an underage student prior to Doe's enrollment at the school.

Doe cites several examples of Hutchinson's misconduct. Beginning in December 2014, Hutchinson began asking Doe's boyfriend, while in the presence of other students, what sexual acts Doe performed. He continued making such inquiries throughout the year. During a gym class, a ball rolled toward Doe. Hutchinson announced to the class, "Don't worry about [Doe], she's used to having balls between her legs." Hutchinson requested that another female student in his gym class "twerk" while she was doing a handstand. He boasted about having talked female students into removing their shirts and engaging in activities in only their sports bras. Even after Doe complained to school officials, Hutchinson continued making sexual comments in front of Doe and other students, and spoke to students about his own sexual acts.

2

Doe alleges that Hutchinson engaged in other forms of harassing behavior as well. He began calling Doe "dumb" in class. Hutchinson discouraged Doe from attending school sporting events, glared at her in public, and on one occasion sat on her feet in an effort to get her to exit a wrestling match. He told the father of Doe's boyfriend to keep his son away from Doe because she was a "troublemaker." He also stated to a male student who made a crude comment to Doe, "You're going to have her mom riding my ass again." Doe claims she was excluded from a school track meet by a different coach because of her complaints, and that she suffered retaliation and bullying from other students after Hutchinson told them he might be fired. As a result of this harassment, Doe withdrew from the school in October 2016.

Doe and her mother, as next friend, filed suit against Hutchinson and his employer, USD 237, advancing claims under Title IX of the Education Amendments of 1972, and 42 U.S.C. § 1983 for violation of Doe's due process and equal protection rights. Hutchinson moved to dismiss the claims asserted against him, arguing that he is entitled to qualified immunity. The district court granted the motion as to Doe's due process claim, but denied qualified immunity on her equal protection claim. Hutchinson filed a timely notice of appeal.

## II

A "district court's order rejecting qualified immunity at the motion-to-dismiss stage of a proceeding is a 'final decision' within the meaning of § 1291." Ashcroft v. Iqbal, 556 U.S. 662, 672 (2009). This rule flows from the doctrine that qualified immunity protects from trial, not just from judgment, and would thus be lost if an

3

interlocutory appeal were not permitted.  Mitchell v. Forsyth, 472 U.S. 511, 525-526 (1985).  In deciding interlocutory qualified immunity appeals we are limited to purely legal issues and may not review factual disputes.  Ortiz v. Jordan, 562 U.S. 180, 188 (2001).  We review a district court's determination as to qualified immunity de novo.  Farmer v. Perrill, 288 F.3d 1254, 1259 (10th Cir. 2002).  To determine whether a defendant is entitled to qualified immunity, the court must answer two questions:  (1) whether a defendant's conduct violated plaintiff's constitutional rights; and (2) whether the right at issue was clearly established.  Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1239 (10th Cir. 2003).

Because this appeal stems from the denial of a motion to dismiss, we accept as true all well-pled factual allegations in the complaint and view them in the light most favorable to the plaintiff.  Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678 (quotation omitted).  This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Id. (quotation omitted).  "[I]n examining a complaint under Rule 12(b)(6), we will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable."  Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012).

4

## A

We agree with the district court that Doe has adequately pled a constitutional violation. "Denials of equal protection by a municipal entity or any other person acting under color of state law are actionable under 42 U.S.C. § 1983." Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d 1238, 1249 (10th Cir. 1999). "It is well established in this circuit that sexual harassment by a state actor can constitute a violation of the equal protection clause." Id.; see also Starrett v. Wadley, 876 F.2d 808, 814 (10th Cir. 1989) (holding that "sexual harassment of the sort alleged by plaintiff can violate the Fourteenth Amendment right to equal protection of the laws").

One form of actionable sexual harassment is "hostile environment harassment." Escue v. N. Okla. Coll., 450 F.3d 1146, 1157 (10th Cir. 2006) (quotation omitted). To prevail on such a claim, a plaintiff must show that the defendant's "conduct was sufficiently severe or pervasive as to interfere unreasonably with her school performance and create a hostile or abusive educational environment." Id. The severe or pervasive inquiry "should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) (quotation omitted).[1] Accordingly, the analysis "depends on a constellation of

---

[1] As explained further infra, we consider employment cases as well as educational cases as relevant to the hostile environment standard because "sexual harassment which gives rise to a violation of equal protection in the employment

5

surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." Oncale, 523 U.S. at 82. Two such considerations are "the ages of the harasser and the victim." Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 651 (1999).

Hutchinson contends the complaint is insufficient to establish a violation because Doe alleges only a single explicitly gender-based comment that was directed toward her. This argument rests on three mistaken premises. First, "[f]acially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile . . . environment claim when that conduct is viewed in the context of other, overtly gender-discriminatory conduct." O'Shea v. Yellow Tech. Servs., Inc., 185 F.3d 1093, 1097 (10th Cir. 1999). "This is because what is important in a hostile environment claim is the environment, and gender-neutral harassment makes up an important part of the relevant . . . environment." Chavez v. New Mexico, 397 F.3d 826, 833 (10th Cir. 2005).

Second, "incidents of sexual harassment directed at [students] other than the plaintiff can be used as proof of the plaintiff's claim of a hostile . . . environment." Hicks v. Gates Rubber Co., 833 F.2d 1406, 1415 (10th Cir. 1987); see also Nieto v. Kapoor, 268 F.3d 1208, 1219 n.7 (10th Cir. 2001) ("A finding of pervasiveness or severity need not rest solely on actions aimed directly at a plaintiff, however, but

context will also do so in the teacher-on-student context." Sh.A. ex rel. J.A. v. Tucumcari Mun. Schs., 321 F.3d 1285, 1289 (10th Cir. 2003).

6

may also consider harassment of others . . . .").  Doe may rely on evidence that Hutchinson directed gender-based comments to other students to help establish a general atmosphere of harassment "provided she was aware of such conduct." Hirase-Doi v. U.S. W. Commc'ns, Inc., 61 F.3d 777, 782 (10th Cir. 1995), abrogated on other grounds by Burlington Indus. v. Ellerth, 524 U.S. 742 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775 (1998).

Third, Hutchinson's argument fails to recognize that sexually charged comments, even if not directly about gender, qualify as gender-related under our case law.  See O'Shea, 185 F.3d at 1099 (comments in which co-worker "compared his wife to a Playboy magazine and described a dream about a naked woman jumping on a trampoline" are related to "gender or sexual animus"); Penry v. Fed. Home Loan Bank of Topeka, 155 F.3d 1257, 1263 (10th Cir. 1998) (comments comparing the shape of a roof to breasts and a trip to a Hooters restaurant "have gender-related implications").  Although we do not impose "a general civility code," Oncale, 523 U.S. at 80, we include comments and actions that are inherently sexual in nature under the rubric of "gender-related."

With these principles in mind, we conclude that the complaint sufficiently alleges a pervasively hostile environment.  Although Hutchinson argues that he directed only a single gender-based comment toward Doe, the complaint contains much more.  It alleges that Hutchinson "routinely and openly" spoke to and about female students in sexualized terms, and that he spoke about his own sexual acts in front of students including Doe.  Doe provides three examples:  (1) Hutchinson's

7

crude statement, made in front of Doe's gym class, that she was "used to having balls between her legs"; (2) his request that another female gym student engage in a sexually suggestive dance; and (3) his boasting that he frequently convinced female students to remove their shirts and engage in activities only in their sports bras. In addition, Hutchinson repeatedly encouraged Doe's boyfriend to share details of Doe's sexual history with other students.[2] He called her dumb, discouraged her from attending events, sat on her feet in an effort to get her to leave an athletic event, and disparaged her to her boyfriend's father. Doe was subject to bullying and eventually withdrew from the school.

These allegations plausibly suggest a pervasively hostile environment and thus suffice at the motion to dismiss stage. See Iqbal, 556 U.S. at 678; Escue, 450 F.3d at 1157. They provide far more than a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678. Doe's citation to numerous specific examples of Hutchinson's alleged pattern of misconduct provides the notice to Hutchinson required by Fed. R. Civ. P. 8.

Moreover, in assessing the requisite degree of severity or pervasiveness to support a hostile environment claim, we must be mindful of "surrounding circumstances, expectations, and relationships," Oncale, 523 U.S. at 81, including

---

[2] Hutchinson claims that the inquiries into Doe's sexual behavior cannot be considered in the harassment calculus without prohibiting high school teachers from conducting health classes or making private, appropriate inquiries out of concern for students' wellbeing. We disagree. Construing the complaint in the light most favorable to Doe, see Smith, 561 F.3d at 1098, Hutchinson's inquiries were made either for his own prurient interest or in an effort to demean Doe in front of other students.

"the ages of the harasser and the victim," Davis, 526 U.S. at 651. Hutchinson's role as high school teacher obviously requires greater sensitivity toward students than would be required as between coworkers. See Oncale, 523 U.S. at 82 ("Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive."). In light of all the circumstances as alleged in the complaint, we conclude Doe has plausibly made out a § 1983 claim.

**B**

Hutchinson also appeals the district court's conclusion on the second prong of the qualified immunity analysis. For the law to be "clearly established," there ordinarily must be a Supreme Court or Tenth Circuit opinion on point or the clearly established weight of authority from other circuits must point in one direction. Medina v. City & Cty. of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992) overruled on other grounds by Morris v. Noe, 672 F.3d 1185, 1197 n.5 (10th Cir. 2012). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the pre-existing law the unlawfulness must be apparent." Mimics, Inc. v. Vill. of Angel Fire, 394 F.3d 836, 842 (10th Cir. 2005) (quotations omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation."

9

Cortez v. McCauley, 478 F.3d 1108, 1114 (10th Cir. 2007) (en banc) (quotations omitted).

Hutchinson relies heavily on White v. Pauly, 137 S. Ct. 548 (2017), which stated it was "again necessary to reiterate the longstanding principle that clearly established law should not be defined at a high level of generality" but instead "particularized to the facts of the case." Id. at 552 (quotations omitted). That case reversed a decision of this court denying qualified immunity to officers because it "failed to identify a case where an officer acting under similar circumstances as [defendants] was held to have violated the Fourth Amendment." Id. It held that "general statements of the law" are not sufficient to "create clearly established law outside an obvious case." Id. (quotation omitted).

We have previously held "the law holding that sexual harassment is actionable as an equal protection violation has long been clearly established." Sh.A., 321 F.3d at 1288. In Sh.A., defendant was a fifth-grade teacher who repeatedly touched two boys in his class. He "put his hand down the inside of the boys' shirts and rubbed their chests and backs, and put his hand under their shorts and rubbed their legs from mid-thigh almost up to the point where their legs joined their bodies." Id. at 1286. We rejected the defendant's argument that he was entitled to qualified immunity because "the contours of an equal protection claim by a student on the basis of sexual harassment by a teacher were [not] clearly established in 1997 and 1998 when the conduct at issue took place," holding that "a reasonable teacher would have known in the spring of 1997 that sexual harassment which gives rise to a violation of equal

10

protection in the employment context will also do so in the teacher-on-student context." Id. at 1288-89.

Hutchinson argues that because the facts alleged in the complaint differ from those at issue in Sh.A., which involved physical touching, he is entitled to qualified immunity under Pauly. But Sh.A. did more than hold that the facts presented violated plaintiffs' equal protection rights, it clearly established the proposition that "sexual harassment which gives rise to a violation of equal protection in the employment context will also do so in the teacher-on-student context." Id. At the time of Hutchinson's alleged conduct, we had repeatedly held in the employment context that sexual harassment was an actionable equal protection theory. See, e.g., Starrett, 876 F.2d at 814; Johnson v. Martin, 195 F.3d 1208, 1217 (10th Cir. 1999). And we had applied that rule to hostile environment claims, explaining that "[t]he law on discrimination arising from a hostile environment in the workplace is well established," having been fleshed out by numerous decisions from the Supreme Court and this court with respect to § 1983 and Title VII. Nieto, 268 F.3d at 1217-18.

Accordingly, the question is not whether the facts of Sh.A. were sufficiently similar to those alleged in Doe's complaint, but whether our case law would make it clear to reasonable officials that Hutchinson's alleged conduct created a hostile environment. We have already concluded that Doe's allegations sufficiently allege a pervasively hostile environment. The law was clearly established that Hutchinson's full course of conduct may be considered, including statements that were not explicitly gender-based and those made to others of which Doe was aware. See

11

Chavez, 397 F.3d at 833; Hicks, 833 F.2d at 1415. As was the proposition that we must consider context including "the ages of the harasser and the victim." Davis, 526 U.S. at 651. Moreover, our hostile environment jurisprudence includes many cases not involving physical contact. See, e.g., O'Shea, 185 F.3d at 1098-99 (defendant made generalized derogatory comments about women, told others plaintiff was incompetent, told coworkers about a sexual dream, and compared his wife to a Playboy magazine); Bertsch v. Overstock.com, 684 F.3d 1023, 1025-26, 1028 (10th Cir. 2012) (coworker said the department would be better if males were doing the job, had a poster of a scantily clad woman in his cubicle, ridiculed plaintiff in meetings, and refused to look at her).

In light of the foregoing, we conclude that any reasonable high school teacher would have understood that the conduct alleged created a hostile environment in violation of Doe's equal protection rights.

## III

**AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

12