**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 9, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CHERYL ARABALO,

     Plaintiff - Appellant,

v.

CITY OF DENVER, COUNTY OF
DENVER, through its elected officials, the
Denver City Council; ASHLEY KILROY,
in her official capacity as Acting Safety
Manager for the City and County of
Denver; CAPTAIN GUTIERREZ;
PHILLIP DEEDS,

     Defendants - Appellees.

No. 14-1259
(D.C. No. 1:11-CV-02343-MSK-MEH)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

Until March 2012, and for 18 years, Cheryl Arabalo was employed at the Denver

Sheriff's Department (the "Department"), most recently with the rank of captain.

After being fired, Arabalo sued the City and County of Denver ("Denver"), Chief

Phillip Deeds (her supervisor), Ashley Kilroy (acting safety manager for the city),

and Captain Silver Gutierrez. The district court dismissed on pretrial dispositive

motions all but one of Arabalo's claims—her Title VII claim based on a hostile work

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

environment. The parties tried this claim to a jury, and the jury found against Arabalo.

On appeal, Arabalo makes three arguments: (1) that the district court erred in concluding that Arabalo had failed to exhaust her administrative remedies for one of the three bases asserted to support her hostile-work-environment claim: an alleged rape that occurred at her home; (2) that Denver failed to meet its initial burden for summary judgment on all claims; and (3) that the district court erred in permitting her to amend her complaint because the district court should have known that it would later dismiss the claims it permitted her to add. The defendants argue that Arabalo's notice of appeal was insufficient to vest us with jurisdiction on all claims, and alternatively, they argue that we should affirm the district court on the merits.

We hold that we have jurisdiction over Arabalo's entire appeal. Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM the district court's conclusion that Arabalo failed to exhaust her administrative remedies for one basis of her Title VII hostile-work-environment claim, the alleged rape at her home. We AFFIRM the grant of Denver's summary judgment motion and the grant of Captain Gutierrez's motion to dismiss.

## FACTUAL BACKGROUND

### A.  Sexual Harassment by Inmates

Arabalo worked for the Department for 18 years as a corrections officer. In late 2008, Denver County Jail inmates began sexually harassing Arabalo as she

2

performed her duties in the jail. In December 2008, a news story had aired on television called "Sex, Lies, Video Tapes and DPD," an account of jail employees participating in a sex tape. Appellant's App'x at 191. The inmates concluded that Arabalo was part of the sex tape because the news story had reported that a person named "Arabalo" was involved. Going forward, the inmates masturbated toward her during her rounds, cat-called her, and suggested that she engage in various sexual acts with the inmates and with jail personnel. She reported this problem to the Department, but it initially did nothing. The Department told her that she was responsible for enduring the harassment. After she complained for six months, in June 2009, Denver finally transferred her to the Pre-Trial Arraignment Detention Facility ("PTDF"). Later in November 2009, Denver transferred Arabalo back to the Denver County Jail, where the inmates again began sexually harassing her. When she asked Chief Deeds why she was being transferred back to the jail, he told her that she had done nothing wrong and that her work had been excellent.

   B. *Two Deputies Allegedly Sexually Assault Arabalo in Her Home*

In 2004, Arabalo founded the Denver Sheriff Foundation ("the Foundation"), a private, nonprofit organization created to assist the Department employees in need of financial or other assistance. In October 2009, Arabalo and Deputies William Currat and Tyler Mazotti, two other Foundation volunteers, were at Arabalo's home for a Foundation meeting. According to Arabalo, the two men lingered in her basement after the meeting, commented about her breasts, and asked her to lift her shirt. After she tried to leave, they blocked her from leaving the basement. She says that the two

3

deputies then attacked and raped her. None of the three were on duty. The next day, she reported the rape to her supervisor at the PTDF, Chief Deeds, but he told no one else about the incident, and he advised her to keep quiet about it. The Department never investigated her allegations. On the verge of termination for his response to Arabalo, Chief Deeds ultimately resigned from the Department.

*C. Arabalo Files Charges of Discrimination*

In April 2010, Arabalo first filed a charge of discrimination with the Colorado Civil Rights Division ("CCRD"), alleging that during her employment at the Department she was subjected to sexual harassment, retaliation, and a hostile work environment. In July 2010, Arabalo also filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). In October 2010, she sent an e-mail to Kimberly Roy at the CCRD, saying that an unnamed captain (Gutierrez) with the Department had continued to sexually harass her. She did not want to mention his name for fear of retaliation. In November 2010, the Department received a copy of Arabalo's combined CCRD/EEOC charge.

*D. Captain Gutierrez Sexually Harasses Arabalo*

Gutierrez and Arabalo were both captains with the Department, and they both volunteered for the Foundation. Gutierrez had been with the Department for 16 years. Gutierrez was also a board member and the treasurer of the Foundation. As far back as 2008, Arabalo says that Gutierrez had made sexually explicit comments to her at work while they were both captains at the Denver County Jail. For instance, on one occasion, Gutierrez asked Arabalo to unbutton her shirt. He also commented to her

4

about the size of her chest and asked if her breasts were real. For two days, August 26–27, 2008, Gutierrez was temporarily in a position of authority over Arabalo when he served as Acting Chief of the County Jail. Gutierrez denied all of Arabalo's allegations, except admitting that he had probably been "playing around" and said "what are you wearing" to Arabalo once on the phone and that, on another occasion, he told her to unbutton her shirt. Appellant's App'x at 448. In October 2010, Arabalo reported his conduct to Kimberly Roy at the CCRD, but she asked Roy to withhold Gutierrez's name in the CCRD report, and Roy complied with Arabalo's request.

*E. Denver Investigates Arabalo's Rounds Reports*

In late July 2010, the Department began investigating Arabalo for falsely reporting that she had uploaded her rounds reports for the Denver County Jail (the "Rounds-Reports Investigation"). On July 15, 2010, Arabalo had sent an email to a Major Homer, saying, "I reviewed Guard [O]ne Reports for 2, 4, 22, and 21 and it appears that rounds are being made in a timely manner an[d] downloaded up through yesterday 7/14/10." Appellant's App'x at 238. Major Homer checked the Guard One database and "found that it contained no data for July 14, 2010." *Id.* In fact, the "Guard One" reports that Arabalo referenced in her original email "had not been downloaded for several days." *Id.* Writing a memorandum that began the disciplinary process, Major Homer concluded, "Due to the fact that the [reports] were not downloaded and she did not log onto the Guard One System, I can only conclude she has falsified a report to her Superior Officer, and ultimately departed from the truth." *Id.*

5

In January 2011, during her disciplinary proceedings, Arabalo said that she had not meant to say that all of the reports had been downloaded, but instead that she was having issues with the computer and "was doing the rounds in a way that [she] had always done them." *Id.* at 238–40. She said that, in July 2010, she had been able to download some, but not all, of the reports. But the computer system (which logs all the dates and times of all users' entries) showed that Arabalo had not logged into the system until July 21, 2010. It definitively showed that Arabalo had not logged into the system on July 14, 2010, as she said she had done. Ashley Kilroy, the Deputy Manager of Safety, ultimately concluded:

> Your actions amount to conduct prejudicial to the efficiency, good name and reputation of the City and County of Denver; and as such would cause the public to lose confidence in the Denver Sheriff Department and/or the Department of Safety. Among other things, you disobeyed a direct order [to submit the rounds reports], you departed from the truth, you falsified a record and you failed to perform the required duties of your position [to check rounds]. Your actions and admissions have also led us to question your truthfulness and good judgment[,] which are essential to your position with the Denver Sheriff Department. As a member of the Department you are expected to maintain the highest standards of character by the Department and by the citizens of the City and County of Denver.

Appellant's App'x at 242**.** The Department provided Arabalo with the evidence supporting its conclusion that she had lied about submitting her rounds reports. Denver then suspended Arabalo for 70 days.[1]

---

[1] In October 2010, Arabalo told the CCRD about the Rounds-Report Investigation, claiming that it was retaliation for her complaints of sexual harassment by the inmates.

*F. Gutierrez Alleges that Arabalo Embezzled Money from the Foundation*

After learning of Arabalo's CCRD/EEOC complaint in November 2010, the Department began investigating Gutierrez for sexual harassment, ultimately suspending him from work for 75 days.[2] In a January 2011 interview about his sexual harassment, Gutierrez told the internal-affairs investigator that he thought Arabalo had misappropriated funds from the Foundation. Gutierrez was the Foundation treasurer, so he received all of its bank statements in the mail. Gutierrez gave the investigator bank statements showing improper debit-card transactions by Arabalo. He told the investigator that he knew Arabalo was spending Foundation money on non-Foundation expenses. In May 2011, Denver began investigating Arabalo for misappropriating Foundation funds (the "Misappropriation Investigation").

*G. Independent Monitor's Report*

In May 2011, Richard Rosenthal—an Independent Monitor from the Office of the Independent Monitor, a civil-oversight agency tasked with monitoring Denver's policing and law enforcement—submitted a report for the first quarter of 2011 entitled "Police and Sheriff Discipline and Critical Incident Report." Supp. App'x at 688. This quarterly summary included his findings for all recent complaints, incidents, and discipline for Denver's police force. This report is roughly 40 pages, two pages of which deal with Arabalo's misdoings. He concluded that her 70-day suspension for her misconduct in the Rounds-Reports investigation was far too

_____

[2] Gutierrez appealed his suspension, which the Department then reduced to 30 days.

7

lenient. He opined that she should have been demoted and kept from supervising others upon her return to work.

The Independent Monitor's report did not name Arabalo. But Arabalo alleges that Rosenthal released a statement to the media regarding Arabalo's suspension, including her name and providing information from the investigation. While the magistrate judge, in his report and recommendation for Gutierrez's motion to dismiss, did say (without citing to the record) that "Rosenthal released a statement regarding Plaintiff's suspension in which he identified Plaintiff by name and opined that she should be demoted due to her lack of supervision and lying," Appellant's App'x at 193–94, we have found nothing else in the record showing that Rosenthal released Arabalo's name to the media.

### H. Denver Investigates Arabalo's Alleged Misappropriation of Funds from the Foundation

In May 2011, Arabalo reported back to work but was immediately placed on "investigatory leave." Appellant's Br. at 13. By then, the Department had begun an internal-affairs investigation into whether Arabalo, the President of the Foundation, had misappropriated funds.[3] In January 2011, Gutierrez, the Foundation treasurer, had alleged this misappropriation of funds and provided internal affairs with the Foundation's bank statements. The Department turned over the information it

---

[3] The Department has no authority over the Foundation, a separate non-profit entity.

8

gathered during this investigation to the district attorney's office, but Arabalo was never charged.

During this Misappropriation Investigation, Arabalo was placed on investigatory leave until March 2012, when the Department terminated her employment.[4] During its investigation, the Department discovered that Arabalo's daughter had used the Foundation's credit card at least three times, incurring charges of about $600. Arabalo had also used the Foundation's funds to pay her utility bill. Kilroy, the Deputy Manager of Safety, ultimately concluded that Arabalo's actions warranted termination.

*I.   Arabalo's Lawsuit*

Arabalo sued Denver and her coworkers, raising eight claims in her Third Amended Complaint:

- A hostile-work-environment claim against Denver under Title VII ("Title VII Hostile Work Environment");
- A retaliation claim against Denver under Title VII ("Title VII Retaliation");
- A § 1983 claim against Chief Deeds, arguing that he deprived her of equal protection by failing to take proper action in response to her complaint about having been raped ("§ 1983 Against Deeds");
- A § 1983 claim against Denver, arguing that it failed to properly train department employees ("§ 1983 Against Denver");
- A § 1983 claim against Captain Gutierrez, arguing that his sexual harassment deprived her of equal protection;
- A common law defamation claim against Captain Gutierrez;
- A common law outrageous conduct claim against Captain Gutierrez; and

---

[4] Arabalo never told the CCRD or EEOC about this investigation into her allegedly misappropriating the Foundation's money.

9

- A common law claim for breach of an implied employment contract against Denver.

Appellant's App'x at 106–28.

In pretrial motions, the district court disposed of all of Arabalo's claims except one, her Title VII claim based on a hostile work environment. After a seven-day jury trial on that claim, the jury returned a verdict in favor of Denver. On June 1, 2014, the district court entered a final judgment in favor of Denver and awarded attorney's fees and costs to the defendants. Arabalo appeals.

## DISCUSSION

### A. Arabalo's Notice of Appeal

Denver and Captain Gutierrez argue that this court lacks jurisdiction to hear this entire appeal because Arabalo failed to list the June 1, 2014, final judgment in her notice of appeal. In response, Arabalo acknowledges that she did not list the June 1, 2014, final judgment in her notice of appeal through inadvertence. Although not stating a ground we need address, she notes that she "expressly identified the final judgment entered on June 1, 2014, in her Docketing Statement," which she argues should suffice to cure the deficiency in her notice of appeal. Appellant's Rep. Br. at 22–23. She also asserts that any error was harmless because the defendants cannot show prejudice.

Arabalo filed her notice of appeal on July 1, 2014, designating the following: (1) the district court order allowing her to amend her complaint; (2) the district court order partially granting Gutierrez's motion to stay; (3) the magistrate judge's recommendation

10

that the district court grant Gutierrez's motion to dismiss; (4) the district court order granting Gutierrez's motion to dismiss and granting in part Denver's motion for summary judgment; (5) the district court order granting Denver's Rule 50 motion; (6) four district court rulings from May 28 and 29, 2014, regarding jury instructions; and (7) the district court's order awarding the defendants attorney's fees. Supp. App'x at 756–57.

Under Federal Rule of Appellate Procedure 3(c)(1)(B), "the notice of appeal must . . . designate the judgment, order, or part thereof being appealed . . . ." In measuring compliance with this mandatory requirement, we construe notices of appeal liberally, seeking to determine what the appealing party intended to appeal. *Averitt v. Southland Motor Inn*, 720 F.2d 1178, 1180–81 (10th Cir. 1983). Noncompliance is fatal on appeal because the rule's requirements are jurisdictional. *Id.* at 1180.

Construing her notice of appeal liberally, we think that Arabalo sufficiently signaled her intent to appeal the June 1, 2014, judgment entered after her unfavorable jury verdict on the Title VII hostile-work-environment claim. We note that she designated in her notice of appeal the district court's order concluding that she had failed to exhaust her administrative remedies for one of three bases asserted to support her Title VII hostile-work-environment claim (the alleged rape at her home).[5] Because that designation bore

---

[5] We also see that she designated in her notice of appeal some unspecified jury-instruction rulings that we assume dealt in some fashion with her hostile-work-environment claim. But she did not pursue this designation by making any argument about the jury instructions or even including them in the record. In view of this lack of analysis, we conclude that she has waived any argument regarding the jury instructions. *See Coleman v. B-G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997) (holding that it is insufficient to merely mention a complaint about a

11

on the Title VII hostile-work-environment claim, it strongly suggests that she intended to appeal the ultimate judgment entered on June 1, 2014. We think this designation sufficiently notified the defendants that she intended to appeal the Title VII hostile-work-environment claim.

Arabalo also met Rule 3(c)'s notice requirements for her appeal from the district court's order granting summary judgment to Denver. "Where, as here, a suit involves multiple claims, the district court must adjudicate every claim before the court's decision can be considered final and appealable." *Rekstad v. First Bank Sys., Inc.*, 238 F.3d 1259, 1261 (10th Cir. 2001). This means that Arabalo could not have filed a notice of appeal on any of her claims dismissed before trial until the court entered its final judgment, but it does not foreclose Arabalo from doing so afterward. So certainly, it is fair to say that Arabalo intended to appeal the court's adverse ruling on summary judgment: she listed that final order in her notice of appeal. The district court's grant of summary judgment constituted a final order subject to appeal after the conclusion of the entire case. *See id.*; *see also Cunningham v. Hamilton Cty.*, 527 U.S. 198, 203–04 (1999) ("Consistent with these purposes, we have held that a decision is not final, ordinarily, unless it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." (citation omitted)). We think that Arabalo sufficiently notified the defendants of her intent to appeal the district court's final decision on summary judgment. *See Smith v. Barry*, 502 U.S. 244, 248 (1992) ("[T]he purpose of this requirement is to ensure that the

jury instruction on appeal and that issues not adequately raised in the opening brief are deemed abandoned or waived).

filing provides sufficient notice to other parties and the courts."). As such, we turn to consider the merits of Arabalo's appeal.

### B. Title VII Hostile Work Environment

In her notice of appeal, Arabalo listed the district court's order concluding that Arabalo had failed to exhaust her administrative remedies for one of the three bases (the alleged rape at her home) supporting this claim. During trial on Arabalo's Title VII hostile-work-environment claim, and after Arabalo rested her case, Denver moved for a Rule 50 Judgment as a Matter of Law on that entire claim. The district court reserved its ruling until after the close of Denver's case, and it ultimately denied the motion. Although allowing the claim to continue, the district court eliminated one of Arabalo's supporting bases, the alleged rape, because Arabalo had never advised the CCRD or the EEOC of it and thus had failed to exhaust her administrative remedies in asserting that supporting basis. Because Arabalo's failure kept the agencies from considering the effect, if any, of the alleged rape, the district court concluded that she had not exhausted her administrative remedies. It then took a further step and concluded that, under *Jones v. Runyon*, 91 F.3d 1398 (10th Cir. 1996), it lacked subject-matter jurisdiction to allow the jury to consider the alleged rape in deciding the hostile-work-environment claim. In short, the district court denied Denver's Rule 50 motion seeking to defeat the entire hostile-work-environment claim, but limited Arabalo to the bases she had provided to the CCRD and EEOC, for instance, sexual harassment by Gutierrez and by the jail's inmates.

Recognizing the effect of the district court's reliance on *Jones*, Arabalo asks that we overrule it. As a panel, we have no authority to do so because "[w]e are bound by the

13

precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court." *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993). But that does not end our analysis. We still need to address a recent case neither party has raised by a Rule 28(j) letter (the method for notifying the court of changes in the law): *Gad v. Kan. State Univ.*, 787 F.3d 1032 (10th Cir. 2015).

In *Gad*, we concluded that a party's failure to verify submissions to the EEOC did not defeat the court's subject-matter jurisdiction. *Id.* at 1035–36. Beyond that, we called into question some of our circuit's earlier decisions concluding we lacked subject-matter jurisdiction for other failures to meet Title VII's requirements. *Id.* at 1039–40. We suggested that recent Supreme Court cases may have limited jurisdictional requirements to those set forth in 42 U.S.C. § 2000e-5(f)(3), the subsection vesting jurisdiction of Title VII actions in the federal courts. *Id.* at 1038. Even if *Gad* renders the district court's reliance on *Jones* erroneous—which we do not decide today—we still would affirm the district court's excluding evidence of the alleged rape to support the hostile-work-environment claim. As a condition precedent to suit, even if not a jurisdictional prerequisite, Arabalo was required to notify the CCRD and the EEOC of the alleged rape before she could later rely on it in support of her hostile-work-environment claim. *See* 42 U.S.C. § 2000e-5(b).

For instance, in *Shelton v. Boeing Co.*, 399 F.3d 909, 912 (8th Cir. 2005), the Eighth Circuit noted that "[e]xhaustion of administrative remedies is a condition precedent to the filing of an action . . . in federal court." It ultimately held that because the EEOC could not extend the scope of investigation outside the time period of discriminatory acts the

14

plaintiff identified in his charge of discrimination. It concluded that for any alleged discriminatory acts outside this period plaintiff had failed to exhaust his administrative remedies. *Id.*; *cf. Teal v. Potter*, 559 F.3d 687, 691–93 (7th Cir. 2009) ("The scope of the EEOC's investigation was defined by Teal in her complaint; it would be unreasonable to conclude that the agency would have discovered the July 2003 discharge based on this single, vague and unsupported sentence."); *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (citing *Fine v. GAF Chemical Corp.*, 995 F.2d 576, 577–78 (5th Cir. 1993)) (holding that the facts the plaintiff included in his EEOC charge would not cause the EEOC to investigate a disparate-impact claim). In our view, these cases are consistent with our own precedent. For example, we have said that "[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (alterations omitted) (quoting *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005)).

Because she deprived both agencies of the ability to consider the alleged-rape evidence, Arabalo failed to exhaust her administrative remedies for it. In *Gad*, we concluded that "the verification requirement is a condition precedent" to suit, 787 F.3d at 1042, and we conclude it is a condition precedent here, too, for exhausting remedies by notifying the investigating agencies of the grounds supporting the claim. *See, e.g.*, *Shelton*, 399 F.3d at 912 (holding that the failure to include relevant facts in the EEOC charge was a failure to satisfy the condition precedent). Arabalo's need to disclose her bases supporting her alleged claim is a condition precedent to her suit, not a mere

15

affirmative defense for which the defendant must bear the burden. *See Gad*, 787 F.3d at 1042.[6] We see no dispute that Arabalo failed to meet the condition precedent necessary to rely on the alleged rape to support her claim—advising the CCRD and EEOC of this support for her claim and thus exhausting her administrative remedies.

As a way of excusing her failure to tell the CCRD or the EEOC of the alleged rape, Arabalo contends that her "hostile work environment claim was holistic and consisted of one single claim." Appellant's Br. at 38. In response, we fail to see how an administrative agency investigating Arabalo's hostile-work-environment claim would naturally stumble upon the unstated alleged rape at her home.

*C. Title VII Retaliation and § 1983*

Arabalo next appeals the district court's grant of summary judgment on her Title VII retaliation claim, her § 1983 claim against Deeds, and her § 1983 claim against Denver. We review de novo the district court's grant of summary judgment. *Manard v. Fort Howard Corp.*, 47 F.3d 1067, 1067 (10th Cir. 1995). "Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir. 1991). "The moving party bears the initial responsibility of presenting evidence to show the absence of a genuine issue of material fact."[7] *Hom v. Squire*, 81 F.3d 969, 973 (10th

---

[6] We note that the administrative-charge requirement is found in the same subsection as the verification requirement at issue in *Gad*, likely also making it at least a condition precedent. *See Gad*, 787 F.3d at 1042.

[7] Arabalo's main argument on appeal is that Denver failed to meet its initial burden in moving for summary judgment on all of her claims. She asks us to reverse

16

Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In seeking summary judgment, the moving party must initiate the process by averring "an absence of evidence to support the nonmoving party's case." *Celotex Corp.,* 477 U.S. at 325. "[T]he movant need . . . only point to an absence of evidence to support the non-movant's claim." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* (quoting *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000)). "If the movant carries this initial burden, the nonmovant . . . must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Kannaday*,

the grant of summary judgment entirely on this basis. She relies heavily on *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976 (10th Cir. 2002). In *Trainor*, we analyzed the requirements of a moving party's initial burden, ultimately reversing the district court's grant of summary judgment because "even if we were to assume that defendants carried their initial burden on their motion for summary judgment," the nonmoving party had created a factual dispute on a critical issue. *Id.* at 982–83. That being said, *Trainor* does not provide relief for Arabalo. Although the district court described Denver's motion for summary judgment as "materially deficient," and we agree it certainly could have been more complete and helpful, we agree with the district court that Denver still provided sufficient information and argument to prevail on summary judgment.

17

590 F.3d at 1169 (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)). "Before summary judgment will be granted it must be clear what the truth is and any doubt as to the existence of a genuine issue of material fact will be resolved against the movant." 10A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2727 (3d ed. 2015). We review the record in the light most favorable to Arabalo, the nonmoving party. *See Geoffrey E. Macpherson, Ltd. v. Brinecell, Inc.*, 98 F.3d 1241, 1245 (10th Cir. 1996).

With all this in mind, we turn to the following questions: (1) did Denver meet its initial burden in moving for summary judgment; and (2) if so, did the district court err in granting summary judgment?

### i. Title VII Retaliation

To establish a prima facie case of a Title VII retaliation violation, an employee must demonstrate that: (1) she engaged in conduct protected by Title VII; (2) she suffered an adverse employment action; and (3) there is some causal connection between that protected conduct and the adverse action. *Conroy v. Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013) (applying the burden-shifting test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If a plaintiff succeeds in making this prima facie case, the burden then shifts to the employer to articulate a legitimate, nonretaliatory reason for the adverse action. *Stover v. Martinez*, 382 F.3d 1064, 1070–71 (10th Cir. 2004). Assuming the employer does so, the employee must establish by a preponderance of the evidence that the proffered reason is untrue and a pretext. *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1307 (10th Cir. 2005).

In moving for summary judgment on the Title VII retaliation claim, Denver argued that Arabalo could not show: (1) an adverse employment action; (2) a causal connection between protected conduct and any adverse employment action; (3) exhaustion of her administrative remedies; and (4) pretext that would defeat the Department's legitimate, nondiscriminatory reason for its actions.

As protected conduct, Arabalo points to her complaining to her employer about the inmates' and Gutierrez's sexual harassment and her reporting discrimination to the CCRD and the EEOC. In particular, she claims three adverse-employment actions: (1) the July 2010 Rounds-Reports Investigation into Arabalo's falsification of rounds reports and her resulting suspension; (2) the May 2011 Misappropriation Investigation and her termination; and (3) the release of information to the media from the Independent Monitor's semi-annual report on police incidents and discipline. For the first action, the district court concluded that Arabalo had failed to prove pretext, making summary judgment in favor of Denver appropriate. For the second, the court concluded that Arabalo had failed to exhaust her administrative remedies, a jurisdictional bar to judicial review. And, for the third, the district court concluded that Arabalo had failed to show causation between her protected activity and the release of the information to the media. We discuss each in turn below.

### a. Pretext for the Rounds-Report Investigation

For the Rounds-Reports Investigation, the district court concluded that Arabalo had met her burden to establish a prima facie case of retaliation. Even so, the district court granted summary judgment in favor of Denver, concluding that Denver had given a

19

nondiscriminatory reason for this investigation and that Arabalo failed to show pretext. The district court found that Arabalo had failed to identify facts that refuted Denver's proffered nondiscriminatory basis for her termination:

> Ms. Arabalo does not point to evidence that other similarly-situated employees who had falsely (or, perhaps in Ms. Arabalo's view, incorrectly) claimed to have uploaded work data were not investigated, does not contend that Major Homer's allegations were demonstrably false (*i.e.* that the rounds data had been uploaded promptly), nor has she pointed to evidence that would suggest that the decision to investigate a supervisory employee with law enforcement responsibilities that appears to have falsely claimed to have ensured that rounds were being performed is a particularly implausible one.

Appellant's App'x at 524.

We agree with the district court. Because Arabalo established her prima facie case for the Rounds-Reports Investigation, the burden then shifted to Denver to articulate a legitimate and nonretaliatory reason for the adverse action. *See Stover*, 382 F.3d at 1070–71 (applying the *McDonnell-Douglas* burden-shifting test). We think that Denver met its initial burden in moving for summary judgment on the question of pretext. *See Celotex Corp.*, 477 U.S. at 323. Denver's argument was that "[e]ven if Plaintiff is able to show a *prima facie* case of retaliation under Title VII, she will not be able to prove the City's articulated reasons for the disciplinary actions taken against her were pretextual." Appellant's App'x at 214. In a footnote, Denver explained that "[t]he non-discriminatory reasons for disciplining Plaintiff are set forth in great detail in Exhibit 1 and Exhibit 2." *Id.* at n.2.

Exhibit 1 was a January 31, 2011, letter from Denver to Arabalo that explained why Denver was suspending her without pay for 70 days. In this letter, Denver identified the

20

"alleged misconduct upon which discipline is being contemplated." Appellant's App'x at 238. It discussed the false reporting allegations that Denver had begun investigating in July 2010. Denver concluded that Arabalo's actions hurt Denver's good name, would cause the public to lose confidence in the city, and caused Denver to question her truthfulness and good judgment.

Exhibit 2 was a March 16, 2012, termination letter from Denver to Arabalo relying on her misconduct revealed in the May 2011 Misappropriation Investigation. It did not mention the Rounds-Reports Investigation or its conclusions.

We think that the suspension letter—with its findings and conclusions that Arabalo had falsified her rounds reports—sufficiently met Denver's initial burden in moving for summary judgment. After all, poor performance of job duties is "the quintessential legitimate, nondiscriminatory reason" for discipline. *Bertsch v. Overstock.com*, 684 F.3d 1023, 1029 (10th Cir. 2012). Denver's proffered reason for Arabalo's suspension is a sufficient, nondiscriminatory reason for its decision. By citing to her suspension letter in its motion, Denver met its initial burden in moving for summary judgment on pretext.

At this point, Arabalo bore the burden of proving by a preponderance of the evidence that the employer's articulated reason was mere pretext. *Jaramillo*, 427 F.3d at 1307, 1312 (holding that plaintiffs bear the burden of showing that "each reason given by the employer is unworthy of credence"). A plaintiff demonstrates pretext by producing evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer

21

that the employer did not act for the asserted non-discriminatory reasons." *Id.* at 1308 (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). Evidence of pretext may include: (1) earlier treatment of the plaintiff; (2) the employer's policy and practice regarding employment of protected classes; (3) disturbing procedural irregularities; and (4) the use of subjective criteria. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002).

Arabalo argued before the district court that "[a] reasonable jury could conclude that, based on this and other evidence that will be presented at trial, the [Rounds-Report] Investigation was not warranted, and the discipline imposed was excessive, especially compared to other egregious acts committed by high-ranking officials." Appellant's App'x at 382. However, Arabalo never disputes that the Department believed that she had lied about uploading her rounds reports. Instead, she only suggests that the Department should not have begun investigating her in the first place. Even considering the evidence in the light most favorable to Arabalo, she has not produced evidence of "such weaknesses" or any "inconsistencies" in the Department's asserted nondiscriminatory bases for her suspension sufficient to show pretext. *Jaramillo*, 427 F.3d at 1308; *see also Metzler v. Fed. Home Loan Bank*, 464 F.3d 1164, 1179–80 (10th Cir. 2006) (concluding that the plaintiff did not produce sufficient evidence to refute the employer's allegations of poor performance). While Arabalo argues that she had a reason for not submitting her reports—a computer malfunction—we do not think that this is sufficient to undermine the Department's reason for her suspension. Arabalo never "refute[d] the facts underlying [the Department's] proffered explanation: that she

submitted an e-mail claiming to have done something that she did not, in fact, do." Appellant's App'x at 524.

We therefore affirm the district court's grant of summary judgment in favor of Denver on the question of pretext.

### b.  Administrative Exhaustion for the Misappropriation Investigation

Our circuit has previously held that it is a jurisdictional prerequisite that a plaintiff exhaust administrative remedies before she may bring a Title VII lawsuit. *Jones*, 91 F.3d at 1399 ("Exhaustion of administrative remedies is a 'jurisdictional prerequisite' to suit under Title VII."). But, as we discussed in more depth above, we note that our circuit has recently concluded that the verification requirement is not jurisdictional. *Gad*, 787 F.3d at 1038. In fact, in *Gad* we called into question a whole host of our circuit's Title VII jurisdictional cases. *Id.* at 1039–40. We suggested that recent Supreme Court cases may limit jurisdictional requirements to those listed in 42 U.S.C. § 2000e-5(f)(3). *Id.* at 1038.

Again, as we did above, we need not answer whether administrative exhaustion is a jurisdictional bar. Even if administrative exhaustion is only a condition precedent to suit, Arabalo still did not exhaust her administrative remedies for her claim predicated on the Misappropriation Investigation.

First, we think that Denver satisfied its initial burden in moving for summary judgment on the question of administrative exhaustion. Denver identified the alleged acts of discrimination, and then argued:

> It is undisputed that Plaintiff's last charge of discrimination was filed with the CCRD on October 19, 2010. Nor has Plaintiff received a right-to-sue letter based on any of those claims. Accordingly, to the extent Plaintiff's

23

> Title VII retaliation claims are based on discrete acts which took place after October 19, 2010, Defendant is entitled to summary judgment on its affirmative defense[8] of failure to exhaust administrative remedies.

Appellant's App'x at 232 (citations omitted). We think that this is sufficient to meet Denver's initial burden on the issue of whether Arabalo exhausted her administrative remedies.[9] *See Celotex Corp.*, 477 U.S. at 323–24 ("The import of these subsections is that, regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied. One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."). We thus address whether Denver was therefore entitled to summary judgment on this issue.[10]

---

[8] Consistent with *Gad* and our other cited authorities, we conclude that Arabalo needed, as a condition precedent to her claim, to exhaust her administrative remedies for the alleged claim, that is, advise the administrative agencies of that supporting basis for her claim so that it could investigate it and decide its merits. *See* 787 F.3d at 1042.

[9] Again, even assuming that *Gad* clarified the law in our circuit to hold that administrative exhaustion is a condition precedent to suit, not a jurisdictional bar, it is still Arabalo's burden to show she satisfied the requirement. *See* 787 F.3d at 1035–36.

[10] In an attempt to defeat summary judgment in the district court, Arabalo argued that the continuing-violation doctrine saved her claims arising after the charge of discrimination she filed in October 2010. Arabalo has since abandoned this theory on appeal, instead relying on new theories for why the district court had jurisdiction over the Misappropriation Investigation.

The district court explained that "Arabalo's CCRD charge makes no mention whatsoever of the commencement of an investigation into allegations of alleged embezzlement, and thus, the EEOC's investigation into the issues raised in her charge would not have encompassed that issue." Appellant's App'x at 521. The district court expressly found "that Ms. Arabalo did not administratively exhaust any retaliation claim predicated on the May 2011 investigation into allegations that she misappropriated funds from the Foundation, and thus, Denver is entitled to summary judgment on any retaliation claim predicated on that investigation." *Id.* at 522.

Arabalo first argues that that Misappropriation Investigation is reasonably related to the Rounds-Reports Investigation. In response, Denver argues that each discrete act of discrimination constitutes its own unlawful employment practice for which Arabalo must exhaust her administrative remedies before the court can properly hear those claims. We agree with the district court and Denver that the Misappropriation Investigation was entirely separate from the Rounds-Reports Investigation. Arabalo has never disputed that she last communicated with the EEOC or the CCRD in October 2010. We think it unlikely that the agencies would even know about the Misappropriation Investigation based on its knowing about the Rounds-Reports Investigation. The two investigations concerned two unrelated matters. While the pleading standard on administrative exhaustion is lenient, we think it reasonable to require that Arabalo supplement her October 2010 charge with the agencies or initiate a new charge after the Misappropriation Investigation had begun.

Second, Arabalo argues that supplemental jurisdiction under 28 U.S.C. § 1367 permits jurisdiction over the claim predicated on the Misappropriation Investigation, and so the district court could have elected to ignore the administrative exhaustion requirement. Arabalo did not make this argument to the district court, and she does not ask for plain error on appeal. As such, this argument is waived. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."). Even if Arabalo had preserved this argument, it would be unsuccessful. As she admits, "[t]he Court's exercise of ancillary jurisdiction has been classified as discretionary." Appellant's Br. at 32. She argues that "exercising ancillary jurisdiction would be the appropriate catalyst to vindicate values of economy, convenience, fairness and comity." *Id.* at 34. We are not persuaded. The purpose of the administrative exhaustion requirement is to require that aggrieved parties notify the administrative agency in order to achieve the very values she identifies— economy, convenience, fairness, and comity. Because ancillary jurisdiction is discretionary, we see no abuse of discretion in holding a party to her burden to exhaust her administrative remedies before seeking judicial recourse.

Third, Arabalo argues that we should overrule *Jones*, 91 F.3d at 1399, and eliminate the Tenth Circuit's rule interpreting the administrative-exhaustion requirement as jurisdictional. Yet, as mentioned, Arabalo would still lose even if administrative exhaustion was not a jurisdictional requirement but instead was a mere condition precedent—she still failed to exhaust her administrative remedies. *See Gad*, 787 F.3d at 1042. Thus, overruling *Jones* still would provide her no relief.

26

### c. Causation for the Independent Monitor Report

For the third adverse employment action, the district court concluded that Arabalo had failed to establish a prima facie case of retaliation because she could not demonstrate any causal relationship between her protected activity and the Independent Monitor's alleged release of information about her to the media. As mentioned earlier, Rosenthal, an Independent Monitor, wrote a semi-annual "Police and Sheriff Discipline and Critical Incident Report" where he examined all the recent complaints, incidents, and discipline for Denver's law enforcement. Supp. App'x at 688. As part of the larger report, Rosenthal examined Arabalo's discipline following the Rounds-Reports Investigation. He was of the opinion that given Arabalo's documented lies, she should have been demoted. Rosenthal's report did not mention Arabalo by name. Even so, Arabalo alleges that Rosenthal released a statement to the media regarding Arabalo's suspension, including her name and information related to Denver's investigations against her.

To us, Arabalo argues that she "never once claimed the Independent Monitor's report was retaliatory." Appellant's Rep. Br. at 6. She instead challenges the release of information to the media. She says that she "was humiliated and incredibly angered by the release of this statement to the media, especially because she did in fact check the rounds." Appellant's Rep. Br. at 7–8. Her argument is that she "experienced extreme difficulty obtaining employment due to the damage to her reputation as a result of the allegations released to the media, which were only lodged against her because she complained about discrimination." *Id.* at 8.

27

Based on Arabalo's explanation of her argument, we need not analyze whether the district court correctly concluded that she failed to establish causation. Instead, we must address the "release of this statement to the media" and determine whether she has some legal redress available. Arabalo suggests that, because Denver supposedly had wrongly concluded that she lied about uploading her rounds report, its release of that conclusion to the media is a further aggravation of that same wrong. Given our conclusion that Denver's conclusion that she had lied about uploading the rounds reports was a legitimate, nondiscriminatory conclusion, we certainly would hesitate to conclude that Denver could not freely release information to the public about its own poor performance without subjecting itself to liability. Because Arabalo does not dispute that Denver concluded that she lied about having submitted her rounds reports, she gives us no other reason to question the legality of the "release of this statement to the media." We therefore affirm on this issue as part of our conclusion that Arabalo failed to show that any discipline from her rounds-report misconduct was pretextual.

### ii. Section 1983 Claims

The Equal Protection Clause of the Fourteenth Amendment guarantees that "[n]o State . . . shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause 'keeps governmental decision makers from treating differently persons who are in all relevant respects alike.'" *Soskin v. Reinertson*, 353 F.3d 1242, 1247 (10th Cir. 2004) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)); *see also Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1233 (10th Cir. 2009) ("Equal protection 'is essentially a direction that all persons

28

similarly situated should be treated alike.'" (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985))). Generally, to state a claim under § 1983 for violation of the Equal Protection Clause, a plaintiff must show that he or she is a member of a class of individuals that is being treated differently from similarly situated individuals who are not in that class. *SECSYS, LLC v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012).

Denver moved for summary judgment on all of Arabalo's § 1983 claims, arguing that she had simply not identified any sort of equal-protection violation. On appeal, Arabalo argues that the district court should not have conducted a summary-judgment analysis of these claims at all because of Denver's failure to meet its initial burden. Alternatively, she argues that disputed issues of material fact prevented summary judgment. We discuss both aspects of her appeal on each claim separately below.

### a.  § 1983 Claim Against Deeds

In moving for summary judgment, Denver argued that Arabalo could show neither a constitutional deprivation, nor a municipal policy, nor a custom as the moving force behind her deprivation. In particular, "[p]laintiff's claims premised on the Equal Protection Clause must fail because she presents no allegations (and cannot prove) that she was treated differently from others similarly situated." Appellant's App'x at 217. We think that this is sufficient to satisfy Denver's initial burden in moving for summary judgment on this issue. *See Celotex Corp.*, 477 U.S. at 323. Thus, we must determine whether the district court correctly granted summary judgment in favor of Denver.

Arabalo argued to the district court that Chief Deeds' failure to report or investigate her allegations of rape constituted an equal-protection violation. She emphasized that

29

disputed issues of material fact remained regarding whether failing to report and investigate her rape constituted a constitutional violation. She argued that:

> A jury could reasonably conclude that Deeds' failure to investigate and report the allegations of rape violated Mrs. Arabalo's constitutional rights. . . . Indeed, Deeds is fully aware that rape is a serious crime and violates a victim's rights, and that he had a duty to report allegations of such a serious crime.

Appellant's App'x at 385. She also contended that Deeds failed to train any of his subordinates, including the men who raped Arabalo, "regarding the Department's anti-discrimination or harassment policies." *Id.*

The district court granted Denver's motion for summary judgment on this issue. The court noted that "[t]he parties' briefing on this claim is somewhat unclear as to the precise contours o[f] Ms. Arabalo's claim." Appellant's App'x at 525. Even so, the district court decided to "do its best to unpack the claim." *Id.* First, as for Arabalo's claims against Chief Deeds in his individual capacity, the district court granted summary judgment because:

> [T]hat claim appears to be predicated on Mr. Deeds' failure to pass along her report of having been raped by the Deputies to other authorities or his failure to commence an investigation into the matter. . . . The crux of [the right to equal protection] is that the government is required to treat similarly-situated persons similarly, or to articulate a sufficient reason for affording unequal treatment.

Appellant's App'x at 526. "Ms. Arabalo is thus required to show that Mr. Deeds <u>did</u> choose to investigate (or to report to higher authorities) allegations that other employees had been victims of an off-duty rape." *Id.* at 527 (emphasis in original). This Arabalo failed to do. Second, regarding the claims against Chief Deeds in his official capacity, the

district court explained that while Arabalo's response explains that Chief Deeds did not train his subordinates about Denver's antidiscrimination or harassment policies and that "[t]o the extent she is attempting to suggest that Mr. Deeds' failure to train or to supervise the two Deputies . . . caused the rape to occur, Ms. Arabalo fails to account for the fact that the rapes occurred when all parties involved were off-duty and off-premises." Appellant's App'x at 525.

On appeal, Denver argues that Arabalo's equal-protection claims fail as a matter of law. It says that Arabalo did not demonstrate that "she was treated less favorably than similarly situated individuals with respect to the issues Plaintiff attempted to raise against all Defendants." Department's Br. at 11. Further, "[s]he failed to cite authority to show Defendant Phillip Deeds' actions arose to the level of a constitutional violation or that he breached any alleged duty causing a constitutional violation." *Id.*

We agree with Denver and with the district court: Arabalo has not articulated any sort of cognizable constitutional deprivation based on either Deeds' failure to report her allegations of rape or his failure to train or supervise his subordinates. She fails to cite to a single case providing legal support for her equal-protection-clause theory. Even on appeal, she has yet to explain how any of the facts she alleges rise to the level of an equal-protection violation. Taking every fact Arabalo alleges in the light most favorable to her, we cannot see how those facts rise to the level of a constitutional deprivation. Indeed, Arabalo's account does not paint Deeds or his subordinates favorably, but that does not create a deprivation of constitutional rights. Arabalo's failure to come forward

31

with evidence showing that she was treated differently than other similarly situated individuals defeats this claim as a matter of law.

Arabalo has not persuaded us that Deeds deprived her of her constitutional rights when he failed to act after she told him that two deputies had raped her in her home. As the district court correctly explained, the purpose of equal protection is to ensure that the government treats similarly situated people similarly or otherwise gives a sufficient reason for affording unequal treatment. Appellant's App'x at 526 (citing *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008); *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 53–54 (10th Cir. 2013); *Brown v. Montoya*, 662 F.3d 1152, 1172–73 (10th Cir. 2011)). Never in this case, either at the district court or before us, has Arabalo claimed that Deeds acted differently with regard to other similarly situated employees.

As to her argument that Deeds' failure to train and supervise his subordinates caused a constitutional violation (presumably, the two deputies sexually assaulting her at her home), she makes no argument that those two men were acting under the color of state law or exercising any authority derived from their employer.

We affirm the district court.

### b.  § 1983 Claim Against Denver

Denver moved for summary judgment on this claim, arguing that Arabalo could not prove a municipal policy or custom and that "Plaintiff cannot show a direct causal link between any municipal action by Kilroy (or anyone else) and the deprivation of any of Plaintiff's federal rights." Appellant's App'x at 221. Given this, we think that Denver met

its initial burden in moving for summary judgment. *See Celotex Corp.*, 477 U.S. at 323. We turn to whether the district court erred in granting summary judgment to Denver.

The district court summarized Arabalo's claim: "[It] also alleges that Ms. Kilroy's decision to terminate Ms. Arabalo as retaliation for her complaints of discrimination violated her right to equal protection." Appellant's App'x at 528. In particular, Arabalo was arguing that Denver and Kilroy violated her right to equal protection by punishing her more harshly than others similarly situated. Arabalo was therefore required to demonstrate that she received worse treatment than other similarly situated individuals who are alike in all relevant respects. *See Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 54 (10th Cir. 2013).

Arabalo argues that Kilroy treated other individuals differently than Kilroy treated her. On appeal, she briefly explains that Denver and Kilroy treated Gutierrez and Deeds differently when each male employee engaged in wrongdoing. Denver permitted Deeds to resign after his wrongdoing, and it suspended Gutierrez for 75 days, which it later reduced to 30 days.

Regarding Deeds, the district court found that Arabalo and Deeds were "at least roughly, similarly situated . . . . Both were found to have engaged in misconduct taking the form of untruthfulness on matters relating to their official duties." Appellant's App'x at 530. In this regard, the district court compared Arabalo's 70-day suspension for falsifying rounds reports to Deeds' impending termination (although he resigned before being terminated) for his failure to report Arabalo's allegations of rape. The district court then concluded that Arabalo was treated more favorably because she was not terminated

33

for lying about uploading her rounds reports. Arabalo makes no argument on appeal that this conclusion is wrong, and we are inclined to agree with the district court. Comparing Deeds' punishment to Arabalo's, it does seem like Deeds received harsher punishment.

Concerning Gutierrez, the district court found that Arabalo and Gutierrez were not similarly situated. While both forms of misconduct (sexual harassment and falsifying reports) are serious and warrant punishment, the court did not think they were of the same qualitative character. Arabalo makes no argument on appeal that this conclusion was wrong, and we agree with the district court. While both Arabalo's and Gutierrez's actions were serious, they each received serious punishment. In fact, Gutierrez, before he appealed, actually received a harsher suspension period of 75 days compared to Arabalo's 70. We see no reason to disturb the district court's finding that Arabalo and Gutierrez were not similarly situated for the purpose of an equal-protection analysis.

Overall, we think that Denver was entitled to summary judgment on this issue. Again, as with Arabalo's appeal for her § 1983 claims against Deeds, she fails to cite to a single case that provides legal support for her theory on this claim. She simply asserts that Kilroy's actions were in contravention of the equal-protection clause. She argues that, "[a]s a result of the City's policies, customs and/or practices, the City and the Department's employees and agents had reason to believe their discriminatory actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but instead would be tolerated." Appellant's Rep. Br. at 17. This conclusory statement is not persuasive.

We affirm the district court.

34

*D. Arabalo's Motion to Amend Her Complaint*

Arabalo filed a motion to amend her complaint, seeking to add state-law tort claims against Captain Gutierrez. The district court referred this issue to the magistrate judge, who later recommended that the district court grant Arabalo's motion to amend her complaint.

Four weeks after the district court allowed Arabalo to amend her complaint, Captain Gutierrez moved to dismiss the claims against him. The district court again referred the issue to the magistrate judge, who later recommended that the district court grant Captain Gutierrez's motion to dismiss. The district court adopted the recommendation and dismissed all of Arabalo's claims against Captain Gutierrez, including the state-law tort claims.

On appeal, Arabalo does not challenge the district court's order granting Gutierrez's motion to dismiss.[11] Instead, she argues that the district court erred in *granting* her motion to amend "when it was clear [the district court] would subsequently deny her ability to conduct discovery and simply dismiss the claims upon motion from Defendants." Appellant's Br. at 39. She argues that "[g]iven the legal authority . . . Arabalo should not have been permitted to add the [state law] claims in the first instance." *Id.* at 41. True, the magistrate judge later recommended that the district court dismiss the state-law tort claims against Gutierrez, and the district court did dismiss those

---

[11] Even so, she did list this order in her notice of appeal. But because she makes no attempt to argue the merits, any appeal from this order is waived.

claims with prejudice. But adding additional claims in an amended complaint is hardly an ironclad guarantee that they will not be dismissed with prejudice.

We review for an abuse of discretion a district court's ruling on a motion to amend a complaint. *Stubblefield v. Windsor Capital Grp.*, 74 F.3d 990, 994 (10th Cir. 1996). Under that standard, we reject this issue out of hand.

Arabalo did not object to the magistrate judge's recommendation that she be allowed to amend her complaint. Fed. R. Civ. P. 72(a) requires such an objection:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to.

Parties that fail to make timely objections to a magistrate's order waive appellate review. *Boyd Motors, Inc. v. Emp'rs. Ins. of Wausau*, 880 F.2d 270, 270 (10th Cir. 1989) (per curiam). This is known as the "firm waiver rule." *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). There are two exceptions to the firm waiver rule: (1) when a pro se litigant has not been informed of the time period for objecting; or (2) when the interests of justice require review. *Id.* The first exception does not apply here because an attorney represented Arabalo. For the second, we generally require a "miscarriage of justice." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1120 (10th Cir. 2005). Because Arabalo is appealing the magistrate's decision to grant her own motion, this simply does not qualify as a miscarriage of justice. Even further, under the "invited error doctrine," a party cannot

request that a court do something and then appeal when that request is granted. *See ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 771 (10th Cir. 2011).

We affirm the district court.

*E. Captain Gutierrez's Motion to Dismiss and Defendants' Attorney's Fees*

The district court granted Gutierrez's motion to dismiss, and while Arabalo listed that order in her notice of appeal, she failed to argue against—or even mention—the merits of that order once in her briefing to this court. Further, after the district court dismissed the state-law tort claims against Gutierrez, it also awarded him attorney's fees and costs. Arabalo also included the district court's orders awarding attorney's fees and costs in her notice of appeal. But she failed to discuss them whatsoever. Therefore, she has waived any appeal that she intended from these orders. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998); *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994). We affirm any ruling relating to Captain Gutierrez's motion to dismiss or the award of attorney's fees and costs.

## CONCLUSION

We AFFIRM the district court.

Entered for the Court

Gregory A. Phillips
Circuit Judge

37